The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOHN HOLCOMB,<br><br>Defendant. | NO. CR21-075 RSL<br><br>GOVERNMENT RESPONSE TO<br>DEFENDANT'S MOTION TO SUPPRESS<br>EVIDENCE (Dkt 35) |

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 1
*United States v. Holcomb,* CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.    INTRODUCTION

Around 2015, John Holcomb raped a little girl and filmed it.  Local police uncovered Holcomb's crime in 2020 while examining his computer under a state search warrant seeking evidence in an unrelated rape investigation.  Among the items this warrant authorized police to seize were photos and videos showing dominion and control over the device.  Thus, the discovery of these child-rape videos fell squarely within the scope of the warrant and therefore did not violate the Fourth Amendment.

Holcomb's rhetoric-filled motion is notable for what it does not say.  He does not, for example, claim the police misled the judges when they obtained warrants for his home and later his computer.   Nor does he offer a credible argument that the probable cause showing for either warrant was lacking.  And he does not challenge the neutrality of the reviewing judges.  Instead, he uses self-serving, hindsight-driven analysis to attack the investigation.  He relies on state law, even though it has no relevance to the Fourth Amendment analysis in this federal prosecution.  And because he cannot overcome the plain language of the computer search warrant and what that means for his suppression claim, he offers strained interpretations and hyper technical objections to argue that the warrant and its execution were constitutionally infirm.

Outrage is no substitute for a showing of unreasonableness under the Fourth Amendment, however.  Police presented the computer search warrant and supporting affidavit to a neutral judge who found probable cause and approved the warrant.   It clearly described the items to be searched and information to be seized, all of which had a clear nexus to the probable-cause showing.  Police timely executed the warrant, and the child-rape videos they found were within its unambiguous search-and-seizure authority. The Fourth Amendment required no more here, and Holcomb's motion fails.

Finally, suppression would be unwarranted even if Holcomb could prove a Fourth Amendment violation or some errors by the police.  Supreme Court precedent precludes suppression because the police were entitled to rely on a facially valid warrant under

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 2
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*United States v. Leon*, 468 U.S. 897, 914 (1984).  And even if there is police misconduct to deter, suppression's high cost far exceeds its minimal deterrent value here.

## II.    FACTUAL AND PRODECURAL BACKGROUND

This prosecution did not start with a child-exploitation investigation.  Rather, local police learned that Holcomb raped a young girl and filmed it while investigating an allegation that he sexually assaulted an adult female, J.J.  As part of that investigation, police searched Holcomb's Skagit County home and seized his computer.  Police then sought a warrant for that computer (among other devices) and during the digital examination, the forensic examiner discovered several videos of Holcomb sexually assaulting a child.  As a result, Holcomb has been charged with production of child pornography in violation of 18 U.S.C. § 2251(a), (e).  The videos he created and now moves to suppress will form the core of the government's evidence at trial.

In his motion, Holcomb devotes considerable time to a blow-by-blow of the events leading up to the current prosecution.  But much of the detail he includes is irrelevant to the Fourth Amendment analysis that governs his motion.  The government has therefore endeavored to highlight the material facts, which, it would appear, are largely undisputed.[1]

## A.    Local police investigating an alleged rape obtained a search warrant for Holcomb's home and seized his desktop computer.

In the early morning hours of January 27, 2020, the Burlington Police Department responded to a 911 call placed by John Holcomb.  Dkt 35-1 at 1.  Upon arriving at Holcomb's Skagit County home, police spoke with J.J., who was "visibly shaken," and

---

[1] Holcomb insists in a footnote that "[t]he government should identify any facts it disputes."  Dkt 35 at 2 n.1.  The government declines to do so and rather states the facts here based on the evidence available.  It notes, however, that Holcomb asserts various facts without citations to or support in the record.  *E.g.*, Dkt 35 at 19, 21.  The government disputes each unsupported factual assertion, many of which are really just his baseless claims about the subjective motivations of police and prosecutors  he labels assertions of fact.    .

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 3
*United States v. Holcomb*, CR21-075 RSL

1   said Holcomb had sexually assaulted her.  *Id.*  At the police station, J.J. provided a

2   detailed statement to the police, explaining among other things[2]:

3   • She and Holcomb were friends and had previously dated.

4   • She was getting out of a bad relationship, and Holcomb offered to help her

5   move.

6   • Several days earlier, Holcomb picked her up and helped her move out of her

7   home.

8   • The two had consensual sex on several occasions since that time, both at a

9   hotel and in Holcomb's home.

10  • During the final sexual encounter before the alleged assault, they were having

11  sex in Holcomb's bedroom.  And without her consent, Holcomb took pictures

12  with his cell phone.

13  • Holcomb later plugged is cell phone into the desktop computer in the living

14  room and showed her the photos he had taken on its screen.

15  • At around 11:00 p.m. on January 26, Holcomb again asked to have sex, and J.J.

16  agreed, if somewhat reluctantly.

17  • What began with J.J. willingly performing oral sex on Holcomb concluded

18  with her struggling to get away from him while he forced her head down onto

19  his penis and digitally penetrated her anus against her will.

20  • During the assault, J.J. made it clear she wanted Holcomb to stop but he did

21  not until she managed to get away from him.

22  *Id.* at 17–20.

23  Based on the information provided by J.J., Burlington Det. AJ Kuschnereit applied

24  for and was granted a search warrant to search Holcomb's home for evidence related to

25  the alleged sexual assault.  Dkt 35-1 at 15–24.  The warrant, issued January 28,

26

27  ───────────────

28  [2] The government did not initially receive a copy of J.J.'s recorded interview when requesting discovery, though the
reports provided by the Burlington Police Department and produced in discovery do indicate a recording exists.
Even though the defense has not requested a copy, government counsel has requested a copy of that recording and
provided it to the defense.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 4
*United States v. Holcomb,* CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  authorized the police to seize several items of evidence, including Holcomb's cell phone

2  and the desktop computer located in Holcomb's living room.  *Id.* at 23–24.

3        Officers executed that warrant the same day.  Dkt 35-1 at 25.  They found and

4  seized a Cooler Master desktop tower in the living room that matched the computer

5  described by J.J.  *Id.* at 36.  At the time, the monitors attached to the computer showed

6  evidence of a video surveillance system, including a camera feed for the master bedroom

7  and evidence of communications between Holcomb and J.J.  *Id.* at 37.

8        Later that evening, officers returned to Holcomb's home and arrested him for rape.

9  Dkt 35-1 at 39.  Holcomb provided a post-*Miranda* statement, telling officers that his

10  sexual contact with J.J. was consensual and that the surveillance video on his computer

11  would confirm that fact.  *Id.* at 39.  Holcomb also gave the police consent to search the

12  Cooler Master desktop.  *Id.* at 33.  But he withdrew this consent a few days later, on

13  February 3.  *Id.* at 42.

14  **B.  Police obtained a warrant to search the desktop and seized data, including**

15        **photos and videos constituting evidence of dominion and control.**

16        The day after Holcomb withdrew his consent, Det. Kuschnereit applied for and

17  was granted a warrant to search this desktop computer for evidence related to the rape

18  investigation.  Dkt 35-1 at 45–55; Ex. 1 (the "computer search warrant").  The warrant

19  authorized police to search specific devices in their custody and seize data falling into

20  five categories.  *Id.*  Among these were surveillance video, communications between

21  Holcomb and J.J., and other digital evidence.  Ex. 1.  The warrant also authorized police

22  to search the devices for and seize files, including photos and videos, that might show

23  who exercised dominion and control over the device.  *Id.*  Unlike the other categories of

24  information for which the warrant authorized seizure, this dominion-and-control evidence

25  had no temporal limitation.  *Id.*

26  **C.  While executing the computer search warrant, police discovered that**

27        **Holcomb had raped a child and filmed it.**

28        Det. Kuschnereit sought assistance from Skagit County Sheriff's Office Det.

Duane Neufeld to conduct the forensic examination of the desktop and transferred it to

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 5
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Det. Neufeld's custody on February 5.  Dkt 35-1 at 56.  Det. Neufeld logged the desktop into evidence and began his examination.  *Id.*  On February 21, Det. Kuschnereit, Det. Neufeld, and Skagit County Deputy Prosecuting Attorney Brandon Platter (the prosecutor assigned to Holcomb's case at the time) met to preview some of Det. Neufeld's preliminary findings.  *Id.* at 63.  Det. Neufeld had not yet completed the exam and was still processing hard drives from the desktop but had located videos that appeared to depict Holcomb and J.J. having sex on the night of the alleged assault.  *Id.*  One of the videos appeared to have been captured around the time J.J. reported the assault had occurred and showed her performing oral sex on Holcomb.  *Id.*  However, there was no evidence in the video that Holcomb used compulsion or restrained J.J.  *Id.*  Because he was not yet done with his examination, Det. Neufeld was asked to continue processing and reviewing the evidence to determine if there were any additional evidence, including a request to look for other potential video angles of their interactions.  *Id.*.

That same morning while continuing his examination, Det. Neufeld alerted Det. Kuschnereit that he had found three videos that he believed depicted child sexual abuse on one of the hard drives from the desktop computer.  Dkt 35-1 at 69.  Among these was a black and white video that Det. Neufeld described as depicting the rape of a prepubescent female by an adult male.  *Id.*  Based on this information, Det. Kuschnereit then applied for and was granted a search warrant to search the desktop for evidence of possession of depictions of minors engaged in sexually explicit conduct. Dkt 35-5.

A few days later, on February 25, after concluding that the preliminary findings from Det. Neufeld's examination raised significant questions about the credibility of J.J.'s account, DPA Platter dismissed the rape case against Holcomb.  Dkt 35-1 at 70–71; *see also* Ex. 2.  But as DPA Platter himself noted in a letter explaining why the case remained open, that dismissal was without prejudice, meaning the case could be refiled if new information came to light.  Dkt 35-1 at 71-72; *see also* Ex. 2.

**D.  Based on the videos found on the desktop, state prosecutors in Skagit and Island Counties charged Holcomb with child sexual exploitation crimes.**

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DKT 35) - 6
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Police identified the minor (MV1) depicted in the videos found on Holcomb's

2   computer and determined the abuse he committed likely occurred in Island County.  The

3   Island County Prosecuting Attorney then charged Holcomb with multiple contact sex

4   offenses against MV1, and the Skagit County Prosecuting Attorney charged Holcomb

5   with possession of depictions of minors engaged in sexually explicit conduct.  In Fall

6   2020, Holcomb filed motions to suppress in Island and Skagit County Superior Courts

7   arguing that Det. Neufeld's discovery of the child-rape videos exceeded the scope of the

8   computer search warrant.  Exs. 3, 4. [3]  Specifically, he said the warrant required Det.

9   Neufeld to filter the evidence by date, which Det. Neufeld did not do.  *Id.*  As a result,

10   Holcomb's logic continued, had Det. Neufeld complied with the warrant, he never would

11   have been able to see the child sexual abuse videos because they had creation dates

12   outside the temporal limitation of the warrant.  *Id*.

13   In his motions, Holcomb did not address the dominion and control section of the

14   computer search warrant nor explain why its lack of a temporal limitation was not fatal to

15   his suppression argument.  *Id.*  Regardless, neither Skagit nor Island County responded to

16   this motion, and the state charges were dismissed.

**E.     After dismissal of the state charges, the United States accepted a referral and
charged Holcomb with production of child pornography.**

19   In early 2021, the Burlington Police Department referred this case to FBI for

20   possible federal prosecution given the state prosecutors' dismissals. [4]  Dkt 35-1 at 73-76.

21   The FBI, in turn, referred the matter to the U.S. Attorney's Office for the Western

22   District of Washington, *see id.*, which ultimately accepted the case for prosecution.

---

[3] Curiously, Holcomb attached only the first page of each motion (along with one of the exhibits) to his motion.  The government has therefore attached complete copies of each motion to this response.

[4] In October 2020, DPA Platter communicated with several prosecutors in the U.S. Attorney's Office seeking any advice on options for responding to the suppression argument raised by the defense.  The government has produced a portion of that email correspondence in discovery, including the initial email of DPA Platter that outlines basic facts and statements made by relevant witnesses.  The government declined the defense request for further discovery of the substance if the email communications contained in this thread, concluding these communications are not discoverable.  DPA Platter's email did not include the computer search warrant.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 7
*United States v. Holcomb,* CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      Although Holcomb criticizes Det. Kuschnereit for "forum shopping," Dkt 35 at

2  27, that charge is baseless.  Our criminal-justice system is one of dual sovereigns, each

3  with independent authority to exercise prosecutorial discretion.  Holcomb may dislike

4  this constitutional structure, but his views are irrelevant.  Holcomb's forum-shopping

5  allegation also ignores the record.  No state court suppressed any evidence; instead, state

6  prosecutors dismissed their cases in lieu of responding to his motion to suppress.

7  Moreover, in his state suppression motions, Holcomb relied not only on the Fourth

8  Amendment but also on Washington State law, which imposes different requirements

9  than federal law does.  And state law, as will be discussed below, has no relevance in this

10  federal prosecution.  Finally, for his forum-shopping allegation, Holcomb relies (Dkt. 35

11  at 39) on a 2014 decision by a federal magistrate judge in the Northern District of

12  California, *In re [REDACTED]@gmail.com*, 62 F. Supp. 3d 1100, 1104 (N.D. Cal.

13  2014).  But there, unlike here, a federal magistrate judge in a different district had already

14  "denied a previous application for a similar warrant." *Id.* That case is nothing like this

15  one.

16      At trial, the government intends to introduce the three videos found by the police

17  and that the government alleges shows Holcomb sexually abusing a little girl.  Detailed

18  descriptions of all three can be found in the criminal complaint in this matter.  Dkt 1.

19  While not the entirety of the government's case-in-chief, the videos are certainly critical

20  evidence.  If this Court suppresses those videos as Holcomb asks, the government will

21  likely have to elect between seeking authority to appeal that ruling, see 18 U.S.C. § 3731,

22  or dismissing the indictment.

23              **III.  ARGUMENT**

24      The search that resulted in the discovery of Holcomb's sexual abuse of a child

25  satisfied the Fourth Amendment. The police obtained search warrants to lawfully seize

26  and search Holcomb's digital devices.  In executing those judicially authorized searches,

27  the police found Holcomb's child-rape videos.  And those videos were plainly within the

28  scope of the computer search warrant.  This discovery was entirely constitutional.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 8
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Nothing in Holcomb's motion supports a contrary view.  Much as he wishes it

2    were so, the Court is not free to redraft the computer search warrant so that Holcomb can

3    create constitutional violation where none exists.  And nothing about how the police

4    executed the warrant justifies a conclusion that they exceeded its scope when the

5    discovered the videos.  Nor was the warrant overbroad or insufficiently particular as

6    Holcomb suggests.  Finally, even if a Fourth Amendment violation occurred, Supreme

7    Court precedent makes clear that the exclusionary rule does not apply here.  This search

8    falls squarely within the *Leon* good-faith doctrine, which Holcomb ignores.  Moreover,

9    any deterrent benefit from suppression here would be far outweighed by the substantial

10   social costs—excluding key evidence of child rape and letting a dangerous pedophile

11   walk free.  Holcomb's motion therefore fails.

## A.    Police discovered Holcomb's child-rape videos while executing a search that satisfied the Fourth Amendment.

14   Police found Holcomb's child-rape videos while searching his computer within the

15   scope of a judicially authorized warrant.  Holcomb cannot sidestep this conclusion.  Yes,

16   police found the child-rape videos while searching his computer for evidence in an

17   unrelated investigation.  Yes, that original investigation did not ultimately result in a

18   prosecution.  And absolutely, Holcomb wishes the police had never uncovered his assault

19   of a child.  But unexpected discoveries do not render an otherwise valid search

20   constitutionally suspect, —let alone trigger the exclusionary rule.  There is nothing

21   unreasonable about the police discovering evidence of a new crime while searching for

22   evidence of another so long as they do not exceed the authority given by the warrant.

### 1.    The computer search warrant was valid under the Fourth Amendment.

24   The computer search warrant resulting in the discovery of child sexual abuse by

25   Holcomb complied with the Fourth Amendment.  A Skagit County judge reviewed the

26   application and affidavit, found probable cause, and issued a warrant that particularly

27   described both the objects to be searched and the items to be seized.  The Fourth

28   Amendment requires no more.  *See* Ex. 1.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 9
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

One preliminary matter:  Throughout his motion, Holcomb expresses skepticism over whether the police ever obtained a warrant.  The emphasis he places on this is curious given the record in this case.  For months, he has had the application and supporting affidavit, as well as the reports attached to his motion that refer to this search warrant.  It was not until the evening his motion was to be filed (a Friday preceding a federal holiday) that defense counsel alerted the government they could not locate a copy of the warrant itself.  It does appear there was an oversight, and the warrant was not initially produced in discovery.  However, government counsel obtained and produced that warrant to the defense on the next court day after defense counsel emailed government counsel about this issue.

"The Fourth Amendment requires that search warrants be issued only 'upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.'"  *Dalia v. United States*, 441 U.S. 238, 255 (1979) (quoting U.S. Const. amend. IV).  "Finding these words to be precise and clear," the Supreme Court "has interpreted them to require only three things":  (1) "warrants must be issued by neutral, disinterested magistrates"; (2) "those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will aid in a particular apprehension or conviction for a particular offense"; and (3) "warrants must particularly describe the things to be seized, as well as the place to be searched."  *Id.* (internal quotation marks omitted).

The computer search warrant here easily satisfied all three requirements.  First, there is no evidence suggesting, nor does Holcomb say, that the reviewing judge was not neutral and detached.  Next, even a cursory review of Det. Kuschnereit's affidavit shows why there was a fair probability that video and other digital evidence relevant to the rape investigation would be found on Holcomb's computer.  Dkt 35-1 at 47-54.  Finally, the warrant particularly describes both the specific devices police had authority to search and the limited categories of information they were entitled to seize, each of which had a

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 10
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   clear and obvious nexus to the probable cause supporting the search request.  *See* Ex. 1;

2   Dkt 35-1 at 47-54.

3         Holcomb's halfhearted challenge to the probable-cause showing can be disposed

4   of with ease.[5]  Probable cause exists when "the known facts and circumstances are

5   sufficient to warrant a man of reasonable prudence in the belief that contraband or

6   evidence of a crime will be found."  *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

7   It is a fluid concept that focuses on "the factual and practical considerations of everyday

8   life on which reasonable and prudent men, not legal technicians, act."  *Illinois v. Gates*,

9   462 U.S. 213, 231 (1983) (internal quotation marks omitted).  It demands no showing of

10  "certainty or even a preponderance of the evidence."  *United States v. Gourde*, 440 F.3d

11  1065, 1069 (9th Cir. 2006) (*en banc*).  Rather, a "'fair probability' that the object of the

12  search contains evidence or contraband will suffice.  *Id.*  That finding, in turn, depends on

13  "the totality of the circumstances, including reasonable inferences and is a 'common

14  sense, practical question.'"  *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007)

15  (quoting *Gourde*, 440 F.3d at 1069).  An issuing judge's probable-cause determination is

16  reviewed for clear error and with "great deference."  *United States v. Flores*, 802 F.3d

17  1028, 1043 (9th Cir. 2015) (citation omitted).

18        Here, the state judge who issued the computer search warrant did not clearly err by

19  finding probable cause.  There was indeed a fair probability that the desktop computer

20  (and other devices) would contain evidence relevant to the rape investigation.  Det.

21  Kuschnereit detailed J.J.'s account of her assault, the facts supporting the inference that

22  video files, messaging content, and other digital evidence related to the alleged assault

23  itself and Holcomb's interactions with J.J. were likely on those specific devices.  *See* Dkt

24

25  _____

    [5] Holcomb also says, without any explanation at all, that the initial warrant to search his residence was not supported
26  by probable cause.  Dkt 35 at 29.  A quick review of the supporting affidavit shows why Holcomb devotes no effort
    to putting any flesh on this barebones claim.  The warrant detailed J.J.'s allegations, explained why there was a
27  nexus to the residence, and specifically linked the investigation to potential evidence located on both Holcomb's
    phone and desktop computer.  *Id.*  The reviewing judge would have had no trouble applying common sense to
28  conclude there was a fair probability that evidence of the alleged rape would be found in Holcomb's home.
    Moreover, even if the seizure of his desktop was improper, he gave the police consent to search the desktop, curing
    any potential taint from an unlawful seizure.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 11
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35-1 at 47-54.  Det. Kuschnereit also explained that the video evidence could even be exculpatory if Holcomb and his wife were to be believed.  *Id.*  Exculpatory or inculpatory, it was certainly clear from the affidavit that there was likely to be evidence relevant to the investigation on that computer.

Beyond saying so several times, Holcomb offers little to support his contrary view.  Indeed, the only things he points to are statements he and his wife made to the police explaining why they believed J.J. was lying and that the digital evidence would exonerate him.  Dkt 35 at 30-31.  So, his logic goes, the police must have known J.J. was lying and could not possibly have believed there was probable cause to search the computer.  *Id*.  The same goes for the reviewing judge, one supposes.  But it should hardly be a surprise to Holcomb that neither the police nor the reviewing judge accepted as an article of faith that no crime occurred simply because the target and his spouse said so.  The Fourth Amendment does not require police or judges to believe target's self-serving claims.

And that is what really matters here.  Because reasonable minds may differ about whether a particular affidavit establishes probable cause, the Supreme Court has admonished reviewing courts repeatedly that "the preference for warrants is most appropriately effectuated by according 'great deference'" to a judge's probable-cause finding.  *United States v. Leon*, 468 U.S. 897, 914 (1984); *see also Gourde*, 440 F.3d at 1069 ("We are not in a position to flyspeck the affidavit through *de novo* review.").  Det. Kuschnereit told the state judge the substance of what Holcomb and his wife claimed.  Dkt 35-1 at 47-54.  That judge apparently agreed with the police that probable cause still justified the requested warrant.  That finding was not clearly erroneous and deserves great deference.  Thus, even if this Court or a different court might have reached a different conclusion as to probable cause, that is not grounds for striking down this warrant and suppressing key evidence of child sex abuse.

**2.   Because police had authority to seize photos and videos showing dominion and control, their discovery of Holcomb's child-rape videos was within the scope of the warrant.**

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DKT 35) - 12
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Holcomb's child-rape videos unquestionably fall within the scope of the computer

2    search warrant because police had authority to search for and seize photos and videos

3    showing dominion and control over the respective devices.  *See* Ex. 1.  After all, they

4    could not have seized such photos and videos without searching for and inspecting them

5    first.  Otherwise, there would be no mechanism for the police to identify which items

6    were responsive to the warrant and which items were not.

7    The digital nature of the search does not change things, nor does it render the

8    conclusion that the police's actions were well within the constitutional bounds less

9    apparent.  After all, what if the police had found illegal narcotics in plain view while

10   searching Holcomb's home in this case?  He would have no basis to complain that the

11   seizure of that contraband was outside the scope of the warrant, or that the police began a

12   narcotics investigation based on evidence obtained in their rape investigation.  After all,

13   the Supreme Court has long held that the discovery of evidence of a new crime that

14   happens to be within the scope of a search warrant seeking evidence of an unrelated

15   crime does not offend the Fourth Amendment.  *See, e.g.*, *Horton v. California*, 496 U.S.

16   128 (1990).

17   While Holcomb does not frame the issue in precisely this manner, he does not

18   appear to challenge the notion that assuming police did not exceed the scope of the

19   computer search warrant, their discovery of the child sexual abuse material did not

20   violate the Fourth Amendment.  Rather, he trains his fire on the warrant and its execution

21   in hopes of avoiding the inevitable conclusion that he did not actually suffer a Fourth

22   Amendment violation.

23   "Whether a search exceeds the scope of a search warrant is an issue [courts]

24   determine through an objective assessment of the circumstances surrounding the issuance

25   of the warrant, the contents of the search warrant, and the circumstances of the search."

26   *United States v. Hurd*, 499 F.3d 963, 966 (9th Cir. 2007).  Importantly, the "subjective

27   state of mind" of the executing officer—here, Det. Neufeld—is not "material."  *United*

28   *States v. Hitchcock*, 286 F.3d 1064, 1071 (9th Cir. 2002), *amended and superseded*, 298

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 13
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

F.3d 1021 (9th Cir. 2002).  An officer's "pure heart does not entitle him to exceed the scope of a search warrant, nor does his ulterior motive bar a search within the scope of the warrant, where the warrant was properly issued." *United States v. Ewain*, 88 F.3d 689, 694 (9th Cir. 1996).  In short, an officer's "subjective thoughts play no role in the Fourth Amendment analysis." *United States v. Ramirez*, 473 F.3d 1026, 1030–31 (9th Cir. 2007) (citing *Whren v. United States*, 517 U.S. 806, 811–13 (1996)).

These well-settled principles foreclose Holcomb's claim.  The police stayed within the scope of the computer search warrant, and their discovery of Holcomb's child-rape videos satisfied the Fourth Amendment.

To begin, nothing about the issuance of the computer warrant should raise concern.  Det. Kuschnereit submitted a detailed affidavit and application under oath for a search warrant to a neutral and detached judicial officer.  If the judge did not intend to authorize the search of the desktop as outlined in the warrant, the judge "would have done something to call" Det. Kuschnereit's attention to any deficiency and "not have simply" signed it.  *Hurd*, 499 F.3d at 967.

Next, the computer search warrant's language is unambiguous as to its search and seizure authority.  Specifically, police had authority to search the desktop computer for files, including photos and videos, evidencing dominion and control.  The child-rape videos the police found fall squarely within the warrant's scope.  First, there was no way the police could have had authority to search for videos showing dominion and control of the computer without also having authority to look at all the videos on the computer.  And second, while the Court need not reach the question to deny Holcomb's motion, the videos also fall within the warrant's seizure authority because they depict Holcomb brutalizing a child.  Such videos are surely evidence of his dominion and control over the device on which they were stored.

Effectively conceding that the plain language of the warrant authorized the police to do exactly as they did here, Holcomb invites this Court to simply redraft the computer search warrant in a manner that better suits his suppression argument.  Specifically, he

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 14
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

says the Court should find that the police had no need to ask for authority to seize evidence of dominion and control because they already had plenty of evidence on that score.  The government addresses the substance of this argument below.  At this point, it suffices to note that the warrant the police obtained is what this Court must assess, not the warrant Holcomb wishes they had gotten.

Finally, the circumstances of the search itself support the conclusion that the discovery of the child-rape videos occurred within the scope of the computer search warrant.  Indeed, the investigative timeline is largely undisputed, and it shows how the police acted responsibly and reasonably at every stage:

- On January 28, 2020, police searched Holcomb's home and seized a desktop computer from the living room.  Dkt 35-1 at 15-24; *id.* at 25.

- Holcomb initially consented to the search of that desktop computer but withdrew that consent on February 3.  *Id.* at 33, 42.

- On February 4, Det. Kuschnereit obtained the computer search warrant to search this computer.  *Id.* at 45-55; Ex. 1.

- On February 5, Det. Neufeld logged the desktop computer into evidence and began his forensic examination.  Dkt 35-1 at 56.

- On the morning of February 21, Det. Neufeld, Det. Kuschnereit, and DPA Platter met to review some of Det. Neufeld's preliminary findings, including a video that showed a sexual encounter between Holcomb and J.J.  The video's apparent date and time were consistent with the timing of the alleged assault, and it did show her performing oral sex on Holcomb.  But this video did not appear to show Holcomb restraining J.J. or using force.  *Id.* at 63.

- Because Det. Neufeld's examination was not yet complete, DPA Platter and Det. Kuschnereit asked Det. Neufeld to complete his processing of the device and review of the digital evidence.  *Id.*; *id.* at 71-72.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 15
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- Later that same morning, Det. Neufeld called Det. Kuschnereit and alerted him that he had located three video files that he suspected depicted child sexual abuse. *Id.* at 69.

- Several days later, on February 25, the Skagit County Prosecuting Attorney's Office dismissed the rape case filed against Holcomb and arising from J.J.'s complaint.  *See* Ex. 2. That dismissal was without prejudice, however, meaning the case could be refiled should additional evidence come to light.  Id.; Dkt 35-1 at 71-72.

- Det. Kuschnereit obtained a search warrant authorizing police to search Holcomb's computer for evidence of the unlawful possession of visual depictions of minors engaged in sexually explicit conduct.  Dkt 35-5.

Simply put, Holcomb suffered no constitutional violation here.  The Fourth Amendment sets out constitutional guardrails.  But it does not guarantee a defendant that his secrets will remain hidden.  So long as the police comply with its requirements, the Fourth Amendment does not restrict where an investigation may lead.  Here, at every step of the investigation, the police stayed within constitutional bounds.  That they found unexpected evidence of one crime while investigating an unrelated (and thus far unprosecuted) one is just that—unexpected.  Nothing about this discovery would justify the extreme sanction of suppression.

### 3.    None of Holcomb's criticisms of the investigation alters this conclusion.

Holcomb identifies three supposed flaws in the police's conduct of the investigation that he claims undermine the conclusion that the police discovered the child-rape videos while searching within the scope of the computer search warrant. Each of his theories lacks merit.

### a.    The Fourth Amendment did not require Det. Neufeld to stop the search before it was complete.

Holcomb's first and most forceful criticism centers on his misguided notion that Det. Neufeld had a constitutional duty to stop the search of his computer before it was

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 16
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   complete.   According to Holcomb, once the police learned that J.J. had made a false

2   report, they should have stopped the search of Holcomb's computer at that instant.  Had

3   the police done so, Holcomb says, they never would have uncovered the child-rape

4   videos that he created and stored on his computer.

5          As a threshold matter, had Det. Neufeld done as Holcomb suggested, that would

6   have been in direct conflict with the directive of the prosecutor assigned to the case.

7   Even if Holcomb were correct that the Fourth Amendment required Det. Neufeld to stop

8   the search (he is not), Det. Neufeld's good faith reliance on the advice of a prosecutor

9   means that suppression would be both draconian and unwarranted.

10         The Fourth Amendment imposed no such cutoff.  At no point during the search

11  period was Holcomb exonerated of the rape allegation.  Nor has there ever been a judicial

12  finding that J.J. made a false allegation against Holcomb.

13         Here is what actually happened, as the state prosecutor responsible for the

14  decision, DPA Platter, has explained:  Evidence obtained in the state rape investigation

15  raised doubts about J.J.'s credibility and led the prosecutor to dismiss that case against

16  Holcomb.  But that dismissal was *without prejudice*.  Ex. 2; *see also* Dkt 35-1 at 71-72.

17  Whether by accident or intent, Holcomb overlooks those legally significant words.  *See*

18  Dkt 35 at 22.  But ignoring the words does not erase them.  And indeed, the government

19  is at a bit of a loss as to how what DPA Platter wrote in his letter could ever be read to be

20  a "swift and decisive" conclusion that Holcomb was "wrongly accused," as Holcomb

21  now asserts. *Id.*

22         Holcomb wishes the police had stopped the search at a particular point.  But

23  stopping at that point was not constitutionally required.  Nor would it necessarily have

24  been good police work to stop then.  Unquestionably, the police were right to bring

25  potentially exculpatory evidence to the attention of the prosecutor.  It is to their credit that

26  they did so promptly.  But they were also right to follow the prosecutor's direction and

27  standard procedure in completing the search  because there was no way for them to know

28  if there was other relevant evidence without actually looking.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 17
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After all, one explanation for the incompatibility between J.J.'s account and the videos police discovered initially is that she lied.  Another is she forgot or was confused.  Yet another is that there was more evidence to be discovered such as additional footage..  And yet another is that Holcomb had destroyed the evidence when he had access to the computer before the police seized it.  And whie that might mean relevant files were gone, their deletion might still have letf a digital trail.   The list of possibilities goes on.  The point of an investigation is to investigate.  Here, the police did so properly.  The Fourth Amendment did not impose the strict cutoff that Holcomb imagines.

Holcomb repeatedly lambasts the police for "rummaging" through his hard drive.  And he proclaims that anyone and everyone involved—prosecutors and detectives alike—ignored the warrant and the law because they just wanted to search his computer.  But why?  Implicit in all of Holcomb's conspiratorial arguments is a suggestion that the police knew from the beginning that J.J.'s allegations were false and that their pursuit of the rape investigation was a pretext for something else.  But a pretext for what?  Holcomb never says.  And there is no evidence that law enforcement had any such pretextual motivation here.  Nor would such subjective intent matter under the Fourth Amendment, as already discussed.

> b.    *Whether Det. Neufeld used date filters during his examination is immaterial to the suppression analysis.*

Next, Holcomb grouses about Det Neufeld's failure to use date filters while processing evidence.  (Holcomb made similar arguments in his state suppression motions.  Exs 3, 4.  Simply put, the Fourth Amendment imposed no such technical requirements on the execution of this valid search warrant.  Rather, execution of a warrant is evaluated for reasonableness, *see United States v. Shi*, 525 F.3d 709, 732 (9th Cir. 2008), and here the police acted reasonably.  Whether Det. Neufeld used date filters or not is irrelevant because the computer search warrant placed no temporal limit on police's ability to seize photos and videos showing dominion and control.  Whatever he should have done with respect to the search for other evidence, the warrant permitted him to do exactly as he

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 18
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

did:  review all videos and photos on the computer to discern whether they fell into the dominion-and-control category.  That review uncovered Holcomb's child-rape videos.[6]

Even if the Court were to explore the date-filter issue in depth, the government expects Det. Neufeld, like nearly all forensic examiners, would explain that date information associated with computer files is not always conclusive evidence of when a file was created or accessed.  Moreover, while date filters may be useful tools for processing digital evidence, they are not constitutionally required.

Regardless, there is no reason to think that Det. Neufeld's failure to use such date filters in this search was nefarious or constitutionally reckless.  As the Supreme Court has explained, where "police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way'" to justify application of the exclusionary rule.  *Herring v. United States*, 555 U.S. 135, 147–48 (2009).  Thus, under no circumstances would the way Det. Neufeld executed this search justify suppression.

> c.    *Police timely executed the computer search warrant.*

Finally, there is no merit to Holcomb's claim that the computer search warrant had already expired when Det. Neufeld discovered Holcomb's child-rape videos.  Holcomb asserts that under Washington State Court Rule CrR 2.3(c), the computer search warrant expired after ten days.  That state rule provides that search warrants "shall be directed to any peace officer and shall command the officer to search, within a specified period of time not to exceed 10 days, the person, place, or thing named for the property or person specified."  Thus, according to Holcomb, the discovery of his child-rape videos occurred after the warrant's expiration and was therefore unlawful.

---

[6] The assessment of the state prosecutors who elected to dismiss their respective cases without responding to Holcomb's motion is irrelevant here.  The plain text of the warrant authorized the police to search for and seize the evidence that Holcomb seeks to suppress.  That is the end of the inquiry.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 19
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The police did not violate this state rule when they executed the computer search

2    warrant, as detailed below.  But even if they had violated that rule, suppression would be

3    inappropriate.

4         Whether a search or seizure is reasonable under the Fourth Amendment is a

5    question of federal law and does not depend "on the law of the particular State in which

6    the search occurs." *California v. Greenwood*, 486 U.S. 35, 43 (1988).  Thus, federal

7    constitutional standards govern the admissibility of evidence obtained through state

8    search warrant in federal court.  *United States v. Piver*, 899 F.2d 881, 882 (9th Cir. 1990).

9    And violations of state law are not a basis for application of the exclusionary rule.

10   *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1373 (9th Cir. 1987) (explaining that it

11   is inappropriate to apply the exclusionary rule in situations where no recognized federal

12   rights were threatened); *see also United States v. Cormier*, 220 F.3d 1103, 1112 (9th Cir.

13   2000) (noting that absent a circumstance where federal constitutional standards look to

14   state law, a state law violation cannot justify suppression of evidence in federal court).

15        "The Supreme Court has long analyzed 'search and seizure' using the traditional

16   standards of reasonableness," and "[t]he law of a particular state has never changed that

17   reasonableness standard."  *United States v. Brobst*, 558 F.3d 982, 990 (9th Cir. 2009).

18   "[T]he question here is not whether the search was authorized by state law.  The question

19   is rather whether the search was reasonable under the Fourth Amendment." *Cooper v.*

20   *California*, 386 U.S. 58, 61 (1967). As the Supreme Court has emphasized, "state

21   restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553

22   U.S. 176 (2008).  Likewise, "[a] State is free to prefer one search-and-seizure policy

23   among the range of constitutionally permissible options, but its choice of a more

24   restrictive option does not render the less restrictive ones unreasonable, and hence

25   unconstitutional." *Id.* at 174.  Nor are the state standards incorporated into the federal

26   constitutional standard. *Id.*

27        The Ninth Circuit, too, has "unqualifiedly held" that "'evidence seized in

28   compliance with federal law is admissible without regard to state law,' even when state

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 20
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

authorities obtained the evidence without any federal involvement." *Cormier*, 220 F.3d at 1111 (citation omitted). "'[R]equiring federal district courts to look to state law when determining the admissibility of evidence obtained in accordance with federal law would hamper the enforcement of valid federal laws and undermine the policy favoring uniformity of federal evidentiary standards.'" *Id.* (citation omitted).[7]

Holcomb's reliance on state law is therefore puzzling. *See, e.g.*, Dkt. 35 at 39 (claiming that the search violated not just the federal constitution but also the "Constitution of the State of Washington" and "Washington state court precedent"); *id.* at 34–35 (citing state caselaw).

Nothing in the text of the Fourth Amendment imposes a timeline for the execution or completion of a search. As it does in all cases, the Fourth Amendment demands only reasonableness. Certainly, there might be a set of circumstances where the time required to complete a search could render it unreasonable under the Fourth Amendment. But Holcomb makes no such claim here, nor could he. Indeed, multiple courts have concluded that neither Federal Rule of Criminal Procedure 41 nor the Fourth Amendment impose a constitutional time limit on the examination of digital evidence. *See, e.g.*, *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (explaining that "[c]ourts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search" and finding that the government's five-month delay in searching defendant's computer did not invalidate the search because there was "no showing that the delay caused a lapse in probable cause" or prejudiced defendant).

Here, police began work on the computer search warrant immediately, and Det. Neufeld's discovery of the child-rape videos created by Holcomb was less than three weeks from the date the judge signed the warrant. Whatever temporal outer limit might exist for a search of digital evidence to be constitutionally reasonable, this search came nowhere close to that limit.

---

[7] There are two limited exceptions to this rule—for inventory searches and searches incident to arrest, *Cormier*, 220 F.3d at 1111—but neither applies here.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 21
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Not only is the Washington State rule that Holcomb cites irrelevant here; the
2   police also did not violate it.  As Washington State courts have recognized, digital
3   examinations are not the same as the search of a home or a car.  *See, e.g.*, *State v.*
4   *Grenning*, 142 Wn. App. 518 (2008).  *Grenning* recognized that the seizure of the digital
5   devices pursuant to a warrant sufficed for purposes of the 10-day rule even though police
6   completed the forensic examination long after that period had lapsed.  *Id.* at 527 (finding
7   no problem with the fact that the detective executed the residential search warrant on
8   March 6, 2002, obtained a second search warrant expanding the analysis of the devices
9   21 days later, and did not find the contraband on the computer until over a year after the
10  secondary warrant).  *Id.* at 527.  This conclusion is appropriate, the court explained,
11  because searches of digital media are unique and often occur at a different location than
12  their seizure, involve a greater degree of case knowledge, and contain more information
13  than ordinary searches, so delays are expected and reasonable.  *Id.* at 531.  Adopting the
14  First Circuit's reasoning in a similar case, *Grenning*, explained suppression was not
15  appropriate absent a showing that (1) any delay caused a lapse in probable cause, (2) it
16  created unfair prejudice to the defendant, or (3) officers acted in bad faith.  *Id.* at 533
17  (*citing United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005)).  Ultimately, the
18  *Grenning* court concluded that it was unreasonable to require the detective to have
19  searched three digital devices and completed all analysis within 10 days where none of
20  the circumstances in *Syphers* were present.  *Id.*

21  That reasoning applies with equal force here.  The police began work on the
22  computer search warrant almost immediately.  Although Holcomb wishes the police had
23  not found his child-rape videos, he cannot point to any cognizable prejudice from the
24  alleged delay.  Nor is there any evidence that the police acted in bad faith by delaying the
25  search.  And as explained above, nothing about Det. Neufeld's initial findings vitiated the
26  probable cause or required the search to stop.

27  At bottom, the computer search warrant was crystal clear as to its search and
28  seizure authority, and Det. Neufeld's discovery of Holcomb's sexual abuse of a child

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 22
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   occurred within the scope of that authority.  Because this search satisfied the Fourth

2   Amendment, Holcomb's motion should be denied.

3   **B.      The computer search warrant was sufficiently particular and not overbroad.**

4           Notwithstanding Holcomb's hollow assertions to the contrary, the computer search

5   warrant was not overbroad, nor does it lack particularity.  Both concepts derive from the

6   Fourth Amendment's warrant clause, but they are distinct.  "Specificity has two aspects:

7   particularity and breadth.  Particularity is the requirement that the warrant must clearly

8   state what is sought.  Breadth deals with the requirement that the scope of the warrant be

9   limited by the probable cause on which the warrant is based." *United States v. Banks*,

10  556 F.3d 967, 972–73 (9th Cir. 2009).

11          To prevent "general, exploratory" warrants, the object of the search and the things

12  to be seized must be described with enough specificity "to enable the officers conducting

13  the search reasonably to identify" them.  *United States v. Brobst,* 558 F.3d 982, 993 (9th

14  Cir. 2009) (internal quotation marks omitted).  Reasonable specificity under the

15  circumstances, not elaborate detail, is all that is required.  *Id.*  This requirement ensures

16  the issuing judge "is fully apprised of the scope of the search and can thus accurately

17  determine whether the entire search is supported by probable cause." *Id.* (internal

18  quotation marks omitted).

19          One aspect of Holcomb's motion that makes it difficult to identify precisely what

20  he believes was constitutionally objectionable about the computer search warrant or its

21  execution is his refusal to distinguish between the authority to search and the authority to

22  seize.  Like nearly all search warrants, this one defined both what the police were allowed

23  to *search* (specified digital devices) and what they were allowed to seize (five categories

24  of data that constitute evidence of the sexual assault crime they were investigating).  Ex.

25  1.  This matters because Holcomb bases much of his motion on his complaint that police

26  improperly "rummaged" through the entirety of his computer.  But the warrant authorized

27  the police to search the entire computer.  And there would have been no other way for the

28

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 23
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

police to identify and seize responsive evidence.  Holcomb's complaints aside, this warrant gave the police authority to search the entirety of his devices.

### 1.    The computer search warrant was sufficiently particular.

The computer search warrant was sufficiently particular.  *See* Ex. 1.  It clearly identifies the digital devices to be searched, and there can be no question that that an executing officer would know exactly what devices this warrant authorized the police to search.  So too with the five categories of information the police were authorized to seize.  Indeed, each of the five identifies a type of information, followed by an illustrative list of data that might include that information, and in the case of all but the fifth, a specific time limitation.  Moreover, the warrant clearly identifies the crime under investigation.  Any officer executing this warrant would have understood that each of the categories of information were themselves circumscribed.  For example, the police were not permitted to seize every communication between Holcomb and J.J. between the dates listed in the warrant but only those communications that might constitute evidence related to the sexual assault investigation.  *See* Ex. 1.

In arguing otherwise, Holcomb relies on selective quotations and a misreading of the warrant and its supporting application.  Holcomb spends most of his time on the fact that the search warrant application included the language "including, but not limited to" before identifying the five categories of data the police sought authority to seize.  Dkt 35 at 32–33.  In his view, such language rendered any limits imposed on the police's seizure authority meaningless, permitting them to rummage through his computer and seize anything they choose

His argument misses the mark for several reasons.  First whatever the language in the search warrant application, the warrant issued did not include the "including, but not limited to" language that Holcomb finds so problematic.  *See* Ex. 1.  Next, even if it had, the notion that a reasonable officer would have understood the warrant to authorize a general search of those devices without limitation or reference to the offense under investigation is unfounded.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 24
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Finally, the Ninth Circuit has rejected claims like Holcomb's and upheld warrants containing similar language.  For example, in *United States v. Reeves*, 210 F.3d 1041 (9th Cir. 2000), the defendant argued that a search warrant was insufficiently particular because the warrant featured the phrase "may include, but is not limited to."  *Id.* at 1046–47.  The panel disagreed, noting that because the search was for "evidence of the possession, manufacture, and delivery of the controlled substance methamphetamine," the context "adequately limits the scope of the search and thus prevents it from being overbroad."  *Id.* at 1046; s*ee also United States v. Shi*, 525 F.3d 709, 731 (9th Cir. 2008) (rejecting argument that a warrant did not meet the particularity requirement where the warrant contained the phrase "but not limited to"); *United States v. Washington*, 797 F.2d 1461, 1472 (9th Cir. 1986) (finding that a warrant containing the phrase "but not limited to" was not unconstitutional because the warrant "effectively tells the officers to seize only items indicating prostitution activity"); *cf. United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (non-particular warrant could have been made sufficiently particular "[m]ost obviously" by "specif[ying] the suspected criminal conduct").

Nor does the authority cited by Holcomb on this point support his argument. Inartful drafting of warrants was not the dispositive factor in those cases.  *See e.g., United States v. Bridges*, 344 F.3d 1010 (9th Cir. 2003) (finding warrant defective where, among other things, it failed to specify the crime under investigation and effectively authorized the seizure of an entire business); *Millender v. Cty. of Los Angeles*, 620 F.3d 1016, 1027 (9th Cir. 2010) (holding warrant invalid where police had probable cause to search for a specific firearm but obtained authority to search for a broad category of firearms without probable cause for such a search).

Simply put, here, a reasonably well-trained officer would have understood exactly what the computer search warrant authorized the police to search for and seize.

## 2.     The computer search warrant was not overbroad.

When it comes to breadth, Holcomb has two objections to the computer search warrant's seizure authority.  Neither theory supports suppression.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 25
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    First, Holcomb says the police had no need to seek authority to find evidence of

2    dominion and control because they already knew and could prove it was Holcomb's

3    computer.  Critically, he does not suggest that there was insufficient probable cause to

4    believe that evidence might exist in the form described or that it might be relevant.

5    Instead, he objects because he has decided the police did not need it.

6    The Fourth Amendment does not inquire whether the police already have enough

7    probative evidence on a particular issue or alternative methods for obtaining it.  Instead,

8    the Fourth Amendment asks whether it is reasonable under the circumstances for the

9    police to search for that evidence—an inquiry that depends on whether there is probable

10   cause to believe that evidence will be found in the location police wish to search.

11   And while Holcomb has every incentive today to claim that dominion and control

12   was not in dispute, the police had no way to know at the time of the search whether

13   Holcomb would someday contest dominion and control.  Who used a computer and when

14   or how they used it is always of potential relevance to an investigation or prosecution.

15   And even if those facts can be established by other evidence, the evidence of dominion

16   and control that exists the device in question is both uniquely persuasive and uniquely

17   resilient.  It is uniquely persuasive because it is intrinsic to the device itself.  Most people

18   can easily understand that a selfie on a phone is highly probative of who has used that

19   phone.  It is uniquely resilient because it is usually available even after time has degraded

20   the memory of a witness or made a witness unavailable.

21   Here, the evidence sought by the police was plainly relevant.  Imagine if the police

22   had chosen *not* to seek authority to seize evidence showing dominion and control of

23   Holcomb's computer.  Further, assume the evidence they found on that device proved

24   critical to a future prosecution.  For example, maybe there was a video of J.J.'s sexual

25   assault, but the assailant was not identifiable.  It would take no Clarence Darrow to see a

26   defense opportunity there.  The attorney could argue that maybe the video had been

27   tampered with, or maybe it was a hack.  And then the attorney might ask the jury, "Why,

28   if it is so important, is there no shred of digital evidence showing my client used this

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 26
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    computer?"  With hindsight, Holcomb will doubtless dismiss such concerns here.  Yet the

2    standard he advocates is not reasonableness but police clairvoyance.  The Fourth

3    Amendment requires no such thing.

4        Second, Holcomb says that even assuming dominion and control over the device

5    were relevant, the Fourth Amendment required the judge to impose a time limitation.

6    Again, the Fourth Amendment imposes no such requirement.  Nor would such a

7    restriction make sense with respect to dominion-and-control evidence.  Old selfies stored

8    on a phone are just as indicative of ownership and control as recent ones.  A recent

9    resumé or last year's tax return in the "My Documents" folder may be just as probative of

10   ownership of the computer as ten-year-old versions of the same documents.  It serves

11   Holcomb's interest to have the Fourth Amendment circumscribe search authority in the

12   way that best suits his argument for suppression.  But reasonableness, not a defendant's

13   wishes, are what guide the analysis.  The warrant sought by the police and issued by the

14   judge here was reasonable.

15   **C.**    **In any event, *Leon* precludes suppression because it was objectively**

16          **reasonable for police to rely on the computer search warrant even if**
         **defective.**

17

18        Even if Holcomb could show the computer search warrant violated the Fourth

19   Amendment, the good-faith exception would preclude suppression.  *See United States v.*

20   *Leon*, 468 U.S. 897, 934 n.23 (1984) ("[O]ur good-faith inquiry is confined to the

21   objectively ascertainable question whether a reasonably well-trained officer would have

22   known that the search was illegal despite the magistrate's authorization."); *see id.* at 900.

23   It was objectively reasonable for the police to rely on the validity of the computer search

24   warrant after a superior court judge issued it.  And at every other step, investigators have

25   likewise obtained search warrants—including most recently a federal warrant from

26   Magistrate Judge Theiler.

27        Ordinarily, "a warrant issued by a magistrate . . . suffices to establish that a law

28   enforcement officer has acted in good faith in conducting the search."  *Id*. at 922

   (quotation marks omitted).  To establish reasonable reliance on a search warrant, the

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 27
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

warrant must present a colorable argument for probable cause. *United States v. Krupa*, 658 F.3d 1174, 1179 (9th Cir. 2011). "When officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon*, 468 U.S. at 924.

*Leon*'s good-faith exception applies in all but four narrow circumstances: (1) when the warrant is "so facially deficient" that no executing officer could reasonably presume it to be valid; (2) when the warrant results from recklessly or knowingly misleading the issuing judge; (3) when the affidavit supporting the warrant is "bare bones"; and (4) when the issuing judge "wholly abandons his or her judicial role." *Id.* at 922–23.

None of those exceptions to *Leon* apply here.[8]  The warrant affidavit contained no knowing or reckless material falsehoods.  There is nothing to suggest the issuing judge was anything other than neutral and disinterested.  Nor does Holcomb claim otherwise on these points.  He also does not allege that the judge who issued the computer warrant, or any of the other issuing judges, abandoned their judicial roles.  The computer search warrant clearly and particularly described the locations to be searched and the items to be seized.  And the affidavit made a strong, comprehensive showing of probable cause to justify the object and scope of the search.  Once the judge signed the warrant, it was objectively reasonable for the police to rely upon it. *Massachusetts v. Sheppard*, 468 U.S. 981, 989–90 (1984) ("[W]e refuse to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested").  Thus, the good-faith exception precludes suppression here.

**D.    The high cost of suppression far outweighs any deterrent benefits it may offer, and the exclusionary rule should not be applied here.**

---

[8] Nor does Holcomb cite or discuss *Leon* at any point in his suppression motion.  Presumably he will wait until his reply to raise new suppression claims.  This Court need not permit such tactics. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE (DKT 35) - 28
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Fourth Amendment violations do not automatically trigger suppression of evidence, which is not a personal right or a form of redress. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). Nor is the exclusionary rule a "strict-liability regime." *Id.* at 240. Its "sole purpose" is to deter future Fourth Amendment violations. *Id.* at 236–37. It applies only if the benefits of deterrence outweigh the social costs of suppression. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006). And suppression is always a "last resort," never a "first impulse." *Herring*, 555 U.S. at 140.

Here, the costs of suppression to society and to Holcomb's victim are devastatingly high: A child rapist and producer of child pornography would likely walk free. But the deterrent value of suppression would be minimal at best. To be sure, Holcomb's motion reads like a report card for the local investigation, with Holcomb offering a laundry-list of perceived errors by the police. But very few of Holcomb's criticisms in the fact section of his motion are cited in the argument section as grounds for suppression. And none of the supposed errors in drafting or executing the warrant that Holcomb now cites could have been clear to the police at the time.

Suppression's "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Davis*, 564 U.S. at 237 (citation omitted). It is a "bitter pill" society must sometimes swallow because beyond being a windfall for a criminal defendant, it accomplishes an important goal of deterring police misconduct. *Id.* at 237. Here, there is no real misconduct to deter nor any broader lesson for law enforcement to learn other than with the benefit of hindsight, others might do things differently. As such the benefits of suppression cannot pay its way, and there is no basis to apply the exclusionary rule on these facts.

## IV.    THERE IS NO NEED FOR AN EVIDENTIARY HEARING

Holcomb requests an evidentiary hearing. Unless the Court believes it would benefit from oral argument on this motion, the government sees no reason for this Court to hold a hearing.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 29
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

As detailed above, the resolution of Holcomb's motion depends on an objective assessment of whether the police uncovered the evidence of child sexual abuse while within the scope of the computer search warrant obtained in the rape investigation.  The investigative timeline and police actions appear to be largely undisputed.  And Holcomb has not alleged any material falsehoods in the supporting search warrant affidavits that would justify a *Franks* hearing.  To be sure, he spends considerable time on what *he* thinks were the subjective motivations of the local police and prosecutor, inferences that the government does not believe find support in the record.  But as explained above, plumbing those depths is unnecessary given the objective nature of the Fourth Amendment inquiry.

The only subject the government can envision might require further factual development is why Det. Neufeld did not use date filters during his examination of Holcomb's desktop computer.  But as explained above, there is no need for the Court to make any findings on that question, since the Fourth Amendment did not require such filters and the detective's subjective intent was irrelevant.  The Court can thus resolve Holcomb's motion on the paper record.

## V.    CONCLUSION

In sum, no Fourth Amendment violation occurred in this warranted search. And even if it had, the extreme remedy of suppression is unjustified because the police acted in good faith, and the social costs of suppression would far outweigh any deterrent benefits.

When it comes to the Fourth Amendment, Holcomb's motion is much ado about nothing.  He is incensed that a criminal investigation started on one path and, despite resulting in an apparent dead end, nonetheless may still be his undoing.  His outrage does not make this prosecution or what the police did outrageous.  And his motion should be denied.

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 30
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DATED this 18th day of March, 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney


*s/ Matthew P. Hampton*
MATTHEW P. HAMPTON
Assistant United States Attorney
LAURA HARMON
Special Assistant United States Attorneys
700 Stewart Street, Suite 5220
Seattle, Washington 98101
Phone: (206) 553-6677
Fax: (206) 553-0755
Email: matthew.hampton@usdoj.gov

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
EVIDENCE (DKT 35) - 31
*United States v. Holcomb*, CR21-075 RSL

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970