1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   UNITED STATES OF AMERICA,

10                              Plaintiff,

11                        v.

12   JOHN HOLCOMB,

13                              Defendant.

Case No. CR21-75-RSL

ORDER GRANTING
MOTION TO SUPPRESS

14

15          This matter comes before the Court on defendant's "Motion to Suppress" (Dkt. # 35).

16   Having reviewed the submissions of the parties, the memorandum of *amici curiae* American

17   Civil Liberties Union and American Civil Liberties Union of Washington, and the remainder of

18   the record, the Court finds as follows:

19   **I.      Background**

20          A grand jury charged defendant with production of child pornography, in violation of 18

21   U.S.C. § 2251(a), (e).  Dkt. # 22.  Defendant moves to suppress videos that allegedly show him

22   raping a then-seven-year-old girl.  Defendant argues that this evidence was seized in violation of

23   his Fourth Amendment rights.

24          In January 2020, J.J., an adult woman, accused defendant of rape.  Dkt. # 35-1 at 1-3.

25   Prior to the events in question, J.J. and defendant had last seen each other in 2003.  Id.  In

26   August 2019, J.J. messaged defendant on Facebook.  Defendant responded to her message on

27   January 26, 2020, and the two communicated via Facebook and Signal (an encrypted messaging

28   app).  Id. at 3, 12.  J.J. asked defendant to rescue her from an abusive relationship.  Id. at 1.

1 Defendant agreed to pick up J.J. in the Tri-Cities and bring her to his home in Burlington, WA,
2 which he shared with his significant other, Jill, and their infant. Id. at 1-3.

3      Defendant and J.J. arrived at defendant's home around 5:00 p.m. on January 27, 2020.
4 After meeting J.J., Jill left for work. Between 8:30 p.m. and 9:20 p.m., defendant and J.J. had
5 sex in defendant's bed. Id. at 4. Defendant took photos of them having sex on his phone, and
6 later plugged his phone into his computer in the living room to show her the photos on the
7 screen. Id. at 4-5, 11. J.J. later told police that she did not consent to the photos. Id. at 4.
8 Around 11:00 p.m., defendant and J.J. again had sex in defendant's bed. Id. at 5-6.

9      After midnight, on January 28, 2020, the Burlington Police Department responded to a
10 911 call from defendant. Defendant wanted police to remove J.J. from his residence. Id. at 1.
11 J.J. told police that defendant forced her to have sex with him. In particular, J.J. accused
12 defendant of physically forcing her to perform oral sex on him and of digitally penetrating her
13 anus without her consent. Id. at 1, 5.

14      Later that day, Skagit County Superior Court Judge David Svaren issued a warrant
15 allowing seizure of items relating to the alleged crime of "Rape 2 degree RCW 9A.44.050 –
16 Domestic Violence." Id. at 15, 17-24. Law enforcement executed the Svaren warrant that same
17 day. Id. at 25. The officers observed a security camera pointing at the bed in defendant's
18 bedroom where the rape allegedly occurred. Id. at 9. The officers observed surveillance footage
19 from this camera and visible Signal chats between defendant and Jill and J.J on the monitors
20 attached to defendant's computer. Id. at 36-37. The computer was listed in the warrant, and the
21 officers seized it. Id. at 37-38.

22      Later that day, officers arrested defendant for rape and advised him of his Miranda rights.
23 Id. at 39. Defendant told law enforcement that there was surveillance video on his computer that
24 would show that the sex between him and J.J. was consensual. Id. at 39, 31. Officers also
25 separately spoke with Jill. Jill seemed upset by what occurred and said that she was not in an
26 open relationship. Id. at 40. Jill also relayed that she had seen the surveillance video, and that
27 the sex between defendant and J.J. appeared to be consensual. Id.

28

ORDER GRANTING MOTION TO SUPPRESS - 2

On February 4, 2020, Skagit County Superior Court Judge Laura Riquelme signed and issued a warrant premised on the alleged crime of "Rape 2 degree RCW 9A.44.050 – Domestic Violence." Dkt. # 41-1 at 2. The Riquelme warrant authorized law enforcement to search defendant's computer, laptop, and phone for:

- Evidence of communications to or from [J.J.] and/or between JOHN HOLCOMB, [Jill], or [J.J.]. This communication includes but is not limited to voicemails/audio recordings, SMS, MMS, emails, chats, social media posts/online forums, contact lists and call logs from June 1, 2019 to current.
- Surveillance video or images depicting [J.J.] or JOHN HOLCOMB and any other surveillance video or images from Jan 26th 2020 to current.
- Any location data including GPS coordinates from Jan 26th 2020 to current.
- User search history from the devices to include but not limited to searched words, items, phrases, names, places, or images from Jan 26th 2020 to current.
- Files[,] artifacts or information including but not limited to, documents, photographs, videos, e-mails, social media posts, chats and internet cache that would show dominion and control for the devices.

Dkt. # 41-1 at 3. The Riquelme warrant "commanded within 3 Days, not to exceed ten (10) days" to search and seize the listed evidence, "[a]nd make a return of said warrant promptly, no later than 3 days from the execution of the search warrant." Id.

The affidavit accompanying the Riquelme warrant application explained that law enforcement had already seized defendant's computer, the history of defendant and J.J.'s relationship and messaging, that defendant had plugged his phone into his computer during the period when the rape allegedly occurred, the location of the surveillance camera inside the home, and that defendant told law enforcement that Jill viewed the surveillance video and concluded the sex was consensual, among other information. Dkt. # 35-1 at 44-55.

On February 20, 2020, the detective reviewing defendant's computer located the surveillance video of J.J. and defendant having sex in defendant's bedroom on January 27, 2020. Id. at 62. The video included sound. Id. The detective concluded that it appeared that J.J. was fully participating in the sexual encounter and defendant did not force her to perform oral sex. Id. The detective reported this to the Skagit County deputy prosecutor. Id. at 66. The next day at 9:15 a.m., detectives and the prosecutor met to review the surveillance video. They agreed

ORDER GRANTING MOTION TO SUPPRESS - 3

that it appeared that J.J. was willingly having sex with defendant, and that there was no evidence that he was forcibly restraining her. Id. at 69. The prosecutor, however, instructed the reviewing detective to continue processing the other hard drives of defendant's computer "as per standard procedure and to continue looking for additional surveillance videos or angles that may be present." Id. at 63.

On February 21, 2020 at 10:44 a.m. – approximately an hour and a half after the meeting – the reviewing detective called the lead detective to inform him that while processing the hard drives, he had located three additional video files containing suspected child pornography. Id. at 69. While the surveillance videos were on the upper hard drive of the computer, the child pornography was on the lower hard drive and was date stamped to 2016. Id. at 69, 75.

On February 25, 2020, based on the surveillance video, the prosecutor elected to dismiss the rape charges against defendant without prejudice. Id. at 56, 71-72; Dkt. # 41-2.

On March 26, 2020, law enforcement obtained a new warrant from Skagit County Judge Dianne Goddard. Dkt. # 35-5. This warrant sought evidence in relation to the crime of "Possession of Depictions of Minor Engaged in Sexually Explicit Conduct (RCW 9.68A.070)," and authorized law enforcement to seize evidence of child pornography. Id.

On February 24, 2021, the government filed a complaint in federal court alleging that defendant produced child pornography. Dkt. # 1. On March 16, 2021, Magistrate Judge Mary Alice Theiler signed a warrant allowing the search and seizure of two of defendant's hard drives. Dkt. # 35-6. This warrant was based on the child pornography evidence found in the Skagit County detectives' original search of defendant's computer. United States v. Subject Device A and Subject Device B, MJ21-155-MAT, Dkt. # 1 (sealed affidavit). On April 28, 2022, a grand jury indicted defendant on one count of production of child pornography. Dkt. # 22.

**II.    Analysis**

Defendant moves the Court to invoke the exclusionary rule to suppress the child pornography videos on the grounds that their initial discovery during the execution of the Riquelme warrant violated the Fourth Amendment, and, in turn, that evidence obtained under later warrants is derivative of this illegality. "The Fourth Amendment protects the right to be

free from 'unreasonable searches and seizures,' but it is silent about how this right is to be enforced." <u>Davis v. United States</u>, 564 U.S. 229, 230-31 (2011) (quoting U.S. Const. amend. IV). "To supplement the bare text, [the Supreme Court] created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." <u>Id.</u> at 231-32. "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, relevant here, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" <u>Utah v. Strieff</u>, 579 U.S. 232, 237 (2016) (quoting <u>Segura v. United States</u>, 468 U.S. 796, 804 (1984)).

Defendant brings multiple arguments for why the child pornography videos should be suppressed: (A) the Riquelme warrant lacked probable cause,[1] (B) even if the Riquelme warrant was initially supported by probable cause, law enforcement continued searching pursuant to the Riquelme warrant after probable cause had dissipated, (C) the Riquelme warrant expired by the time it was executed, rendering the search warrantless, (D) the Riquelme warrant was unconstitutionally general, and (E) law enforcement's search exceeded the scope of the Riquelme warrant.[2] The government counterargues that (F) even if the search violated the Fourth Amendment, law enforcement was entitled to rely on a facially valid warrant under <u>United States v. Leon</u>, 468 U.S. 897, 914 (1984), and (G) suppression's high societal cost exceeds its minimal deterrent value here.

### A. Probable Cause

The first issue is whether the Riquelme warrant lacked probable cause. The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath

---

[1] Defendant initially states that the Svaren warrant lacked probable cause. <u>See</u> Dkt. # 35 at 28. However, as defendant's arguments go to the Riquelme warrant, not the Svaren warrant, <u>see id.</u> at 30-31, the Court takes this initial reference to the Svaren warrant as a typographical error.

[2] Defendant also argues that Judge Riquelme never signed the Riquelme warrant, and that the search was therefore warrantless. <u>See</u> Dkt. # 35 at 29-30. However, the government has produced a signed copy of the Riquelme warrant. <u>See</u> Dkt. # 41-1. The Court therefore need not consider this argument.

1 or affirmation." U.S. Const. amend. IV.  "Articulating precisely what . . . 'probable cause'

2 mean[s] is not possible.  [It is a] commonsense, nontechnical conception[] that deal[s] with 'the

3 factual and practical considerations of everyday life on which reasonable and prudent men, not

4 legal technicians, act.'"  Ornelas v. United States, 517 U.S. 690, 695 (1996).  "A search warrant

5 is supported by probable cause if the issuing judge finds that, 'given all the circumstances set

6 forth in the affidavit before him [or her] . . . there is a fair probability that contraband or

7 evidence of a crime will be found in a particular place.'"  United States v. Underwood, 725 F.3d

8 1076, 1081 (9th Cir. 2013) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  Probable

9 cause is not met when the issuing judge lacked a "substantial basis" for concluding that probable

10 cause existed.  Id. (quoting Gates, 462 U.S. at 238-39).  The Court gives "'great deference' to an

11 issuing judge's finding that probable cause supports a warrant and review[s] such findings for

12 clear error."  Id. (quoting United States v. Krupa, 658 F.3d 1174, 1177 (9th Cir. 2011)).

13        Defendant argues that there was insufficient reason to believe that a crime had been

14 committed because the only evidence of rape was J.J.'s report, and her report was countered by

15 Jill's statement to law enforcement that she had watched the surveillance video and believed the

16 sex between J.J. and defendant was consensual.  Defendant argues that officers had no reason to

17 believe that J.J. was any more credible than Jill or defendant.  See Dkt. # 35 at 30-31.

18        Defendant's argument cuts both ways.  Without the benefit of hindsight, officers had no

19 reason to believe that Jill and defendant, interested parties in the outcome of the investigation,[3]

20 were any more credible than J.J.  The warrant application did not obfuscate defendant and Jill's

21 dissent to J.J.'s version of events.  Rather, it included the substance of their statements.[4]  Dkt.

22

23        [3] The Court is unpersuaded by defendant's argument that Jill had no "self-serving interest to

24 exculpate her husband" simply because she "seemed upset by what occurred." Dkt. # 49 at 13 (citing
   Dkt. # 35-1 at 40).  Feeling upset with defendant and desiring to keep him out of prison are not mutually

25 exclusive sentiments.

26        [4] The Court acknowledges that the Riquelme warrant affidavit does not summarize law

27 enforcement's conversation with Jill at the time of defendant's arrest where she stated that she had
   viewed the surveillance video and the sex between J.J. and defendant appeared to be consensual.  It

28 does, however, summarize defendant's statement that Jill had viewed the video and found the sex to be
   consensual.  See Dkt. # 35-1 at 40, 53-54.

# 35-1 at 47-54.  Judge Riquelme therefore considered these competing versions of events and concluded that there was probable cause.

Defendant cites to one in-circuit case, Stoot v. City of Everett, 582 F.3d 910 (9th Cir. 2009), for the proposition that "[l]aw enforcement officers may obviously rely on statements made by the [alleged] victim[] of a [sexual assault] to identify suspects.  But such information does not, on its own, support a finding of probable cause if the information is not reasonably trustworthy or reliable."  Dkt. # 49 at 12 (quoting Stoot, 582 F.3d at 919).  However, Stoot does not stand for the general proposition that victim statements alone are insufficient, and Stoot is readily differentiated from the case at hand.  In concluding that the alleged victim's statements were insufficient to establish probable cause, the Stoot court noted that the statements were made by a four-year-old child over a year after the events had allegedly occurred and that the statements were contradictory and changed during the interview.  Stoot, 582 F.3d at 919-20.  J.J. is an adult woman who was reporting events that allegedly occurred only hours before, and defendant points to no contradictions or changes in J.J.'s own statement.  Judge Riquelme's probable cause finding was not clearly erroneous, and the Court will not overturn it on the benefit of hindsight.

## B.  Search After Dissipation of Probable Cause

Defendant argues that even if Judge Riquelme properly found probable cause, law enforcement's search was impermissible because it continued after viewing the surveillance video showing consensual sex between defendant and J.J., and therefore located the child pornography videos after the dissipation of probable cause.  See Dkt. # 35 at 21-24, 27-28.  Defendant's opening legal argument on this point is limited to one out-of-circuit case, United States v. Loera, 923 F.3d 907 (10th Cir. 2019).[5]  Defendant quotes Loera for the Tenth Circuit's

---

[5] The ACLU amici also argue that Skagit County law enforcement was required to stop the search for lack of probable cause upon viewing the surveillance video.  Dkt. # 40 at 20-22.  However, the amici likewise cite only to out-of-circuit, state law, and arrest-related cases.  Id. (citing United States v. Bizier, 111 F.3d 214, 219 (1st Cir. 1997); United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993); Nicholson v. City of Los Angeles, 935 F.3d 685 (9th Cir. 2019); United States v. Bowling, 900 F.2d 926, 933 (6th Cir. 1990); Washington v. Maddox, 98 P.3d 1199, 1203-04 (Wash. 2004); United

1  proposition that "[t]he reasonableness of a search evolves as the search progresses and as the

2  searching officer learns more about the files on the device that he or she is searching." Id. at

3  920.  However, Loera did not involve a situation where officers discovered exculpatory

4  evidence and nonetheless continued to execute the warrant.  Rather, Loera involved a situation

5  where officers uncovered evidence of a separate crime while executing the warrant and

6  continued searching within the bounds of the warrant after this discovery.  The quote at issue is

7  taken from a paragraph beginning, "Although officers do not have to stop executing a search

8  warrant when they run across evidence outside the warrant's scope, they must nevertheless

9  reasonably direct their search toward evidence specified in the warrant." Id.  The paragraph

10 goes on to instruct that searches should begin by looking in obvious places before progressing

11 outwards to the obscure, and that searching officers should respond appropriately to what they

12 see in determining how to proceed.  Id.  Loera does not indicate that an officer must cease

13 executing a search warrant in accordance with its terms based on what officers discover.

14      Further, the record indicates that Skagit County law enforcement did not consider the

15 surveillance video to be as patently exculpatory as defendant asserts.  See Dkt. # 35-1 at 71-72

16 (Skagit County prosecutor's letter indicating that the surveillance video "raised a legitimate

17 question as to the credibility of the complaining witness' statement," and that he therefore

18 dismissed the case without prejudice, without foreclosing the possibility that additional

19 information may come to light); see also Dkt. # 41-2 at 2 (Skagit County prosecutor's

20 declaration dismissing case, noting that the surveillance video was inconsistent with the alleged

21 victim's account *and* law enforcement observed no other evidence supporting an allegation of

22 forcible sexual contact).  Considering the evidence and arguments before the Court, Skagit

23 County law enforcement was not required to cease its warranted search immediately upon

24 viewing the surveillance video.

25

26

27

28 States v. Marin-Buitrago, 734 F.2d 889, 894 (2d Cir. 1984); United States v. Lopez, 482 F.3d 1067, 1073 (9th Cir. 2007)).

ORDER GRANTING MOTION TO SUPPRESS - 8

1

2    **C. Expired Warrant**

Defendant argues that the search was rendered warrantless because the Riquelme warrant

provided for three days to serve and three days to file a return of service, and the search did not

occur within these limits.  See Dkt. # 35 at 18-19, 21, 29.  The government's response refutes a

different argument, not raised by defendant, that the Riquelme warrant was expired because

Washington State Court Rule CrR 2.3(c) imposes a 10-day limit on warrant execution. [6]  The

government argues that federal, not state, law governs the reasonableness of a search under the

Fourth Amendment.  See Dkt. # 41 at 19-23.

Because defendant provides no legal authority to support the argument that the evidence

must be suppressed because Skagit County law enforcement did not execute the Riquelme

warrant within the period on its face, the Court declines to consider this argument.  Regarding

the application of Washington State Court Rule CrR 2.3(c), the Court agrees that federal law,

not Washington State law, governs the timing of the search.  See United States v. Piver, 899

F.2d 881, 882 (9th Cir. 1990) (In a federal prosecution, "evidence seized in compliance with

federal law is admissible without regard to state law.").  The argument that the warrant was

expired when the search occurred therefore fails.

**D. General Warrant**

Defendant argues that the Riquelme warrant authorized an unconstitutional general

search because it lacked particularity and was overbroad.  "The Warrant Clause of the Fourth

Amendment categorically prohibits the issuance of any warrant except one 'particularly

describing the place to be searched and the persons or things to be seized.'"  Maryland v.

Garrison, 480 U.S. 79, 84 (1987) (quoting U.S. Const. amend. IV).  "Search warrants must be

specific in both particularity and breadth."  United States v. Brobst, 558 F.3d 982, 993 (9th Cir.

2009) (citing United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993)).  "Particularity is the

requirement that the warrant must clearly state what is sought.  Breadth deals with the

---

[6] Washington State Court Rule CrR 2.3(c) provides that search warrants "shall be directed to any
peace officer and shall command the officer to search, within a specified period of time not to exceed 10
days, the person, place, or thing named for the property or person specified."

1  requirement that the scope of the warrant be limited by the probable cause on which the warrant
2  is based." Id. (citing Towne, 997 F.2d at 544).  The Court considers the (i) particularity and
3  (ii) breadth of the Riquelme warrant in turn.  In doing so, the Court keeps in mind that
4  "[s]earches of electronic records pose unique challenges for 'striking the right balance between
5  the government's interest in law enforcement and the right of individuals to be free from
6  unreasonable searches and seizures.'"  United States v. Schesso, 730 F.3d 1040, 1042 (9th Cir.
7  2013) (quoting United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1177 (9th
8  Cir. 2010) (en banc)).

9                                         **i. Particularity**

10         Defendant argues that the Riquelme warrant lacked particularity because its inclusive
11  language allowed search without limitation and its dominion and control clause lacked temporal
12  limitation.  See Dkt. # 35 at 38-40.  "The requirement that warrants shall particularly describe
13  the things to be seized makes general searches under them impossible and prevents the seizure
14  of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the
15  discretion of the officer executing the warrant."  Marron v. United States, 275 U.S. 192, 196
16  (1927).  "The proper metric of sufficient specificity is whether it was reasonable to provide a
17  more specific description of the items at that juncture of the investigation."  United States v.
18  Banks, 556 F.3d 967, 973 (9th Cir. 2009) (quoting United States v. Meek, 366 F.3d 705, 716
19  (9th Cir. 2004)) (internal punctuation omitted).  In Banks, the warrant was sufficiently particular
20  despite lacking temporal limitation because the government did not know that the illegal
21  conduct was limited to a particular time frame.  See id.

22         Here, the lack of temporal limitation in the Riquelme warrant's dominion and control
23  clause is fatal to its particularity.  The rape was alleged to have occurred during a known
24  window of a few hours, and J.J. and defendant had only been in contact for a short period prior.
25  Because law enforcement was aware of the time frame, but the dominion and control clause was
26  nonetheless temporally unlimited, it lacked particularly.

27         The dominion and control clause's lack of temporal limitation is dispositive.  The child
28  pornography videos were time stamped to 2016, far outside the June 1, 2019 and January 26,

1   2020 temporal limitations included in the other clauses of the Riquelme warrant.  "[A] search
2   authorized by a valid warrant may nonetheless be unreasonable if the officers conducting the
3   search exceed the scope of the warrant."  United States v. Johnston, 789 F.3d 934, 941 (9th Cir.
4   2015) (citing United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006)).  If the videos were
5   located while searching pursuant to a different clause of the warrant, the search would have been
6   unreasonable as outside the temporal scope of the clause.  It follows that only the non-
7   temporally limited dominion and control clause could have authorized the search.  Because the
8   impermissibility of the dominion and control clause is dispositive, the Court need not consider
9   the Riquelme warrant's inclusive language.

10                                  **ii.  Breadth**

11          Defendant argues that the Riquelme warrant was overbroad because the only item
12   connected to probable cause for the alleged rape was the January 27, 2020 surveillance video,
13   but the Riquelme warrant allowed a broad search of the entire computer.  See Dkt. # 35 at 33-38.
14   To avoid overbreadth, "there must be probable cause to seize the particular things named in the
15   warrant."  United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009) (quoting
16   In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 857 (9th Cir. 1991)) (internal
17   punctuation omitted).

18          As discussed above, probable cause for the crime of rape supported the Riquelme
19   warrant.  See supra, Part A.  The Court disagrees that *only* the surveillance video was connected
20   to probable cause for the alleged rape.  Nonetheless, the dominion and control clause sought
21   materials outside the scope of probable cause due to its lack of temporal limitation.[7]  The
22   Riquelme warrant affidavit provided no suggestion that there may have been evidence of the
23   alleged crime of rape predating J.J. and defendant's sexual intercourse, much less their
24   communications.  The warrant thus provided permission to search beyond the scope of the crime

25

26          [7] Additionally, defendant's dominion and control over the computer was simply not at issue here.
    After officers seized the computer from his house, defendant acknowledged that the computer was his.
27   He provided detectives with the computer password, described to them how he utilized the computer and
    surveillance camera to record and store video of his sexual contact with J.J., and explained how to locate
28   the surveillance videos on the computer.  See Dkt. # 35-1 at 27.

ORDER GRANTING MOTION TO SUPPRESS - 11

1  alleged.  Cf. United States v. Reeves, 210 F.3d 1041, 1046-47 (9th Cir. 2000) (stating that

2  warrant was not overbroad because the scope of the search was limited to evidence of specific

3  criminal activity).  The Riquelme warrant's dominion and control clause is therefore overbroad.

### E.  Search Beyond Scope of Warrant

5      In the alternative, defendant argues that the entire warrant should be read together to

6  create a temporal limitation restricting the search of items created prior to January 27, 2020, and

7  that law enforcement therefore searched outside the scope of the warrant when it reviewed

8  videos showing a creation date of 2016.  See Dkt. # 35 at 31.  Because the Court concludes

9  above that the dominion and control clause of the warrant was not temporally limited and was

10 therefore impermissibly general, see supra Part D, the Court need not consider this alternative

11 argument.[8]

### F.  Good-Faith Exception

13     The government argues that even if the Riquelme warrant violated the Fourth

14 Amendment, Leon's good-faith exception precludes suppression.  See Dkt. # 41 at 27-28.  The

15 exclusionary rule is not "a personal constitutional right of the party aggrieved," but rather "a

16 judicially created remedy designed to safeguard Fourth Amendment rights generally through its

17 deterrent effect."  United States v. Elmore, 917 F.3d 1068, 1076 (9th Cir. 2019) (quoting United

18 States v. Calandra, 414 U.S. 338, 354 (1974)).  "As such, the question of 'whether the

19 exclusionary sanction is appropriately imposed in a particular case' is an entirely separate issue

20 'from the question whether the Fourth Amendment rights of the party seeking to invoke the rule

21 were violated by police conduct.'"  Id. (quoting Leon, 468 U.S. at 906).  In Leon, the Supreme

---

[8] In his reply brief, defendant argues that the child pornography videos were outside of the scope of the Riquelme warrant because they were located on the lower hard drive of the computer, while the surveillance videos were located on the upper hard drive.  See Dkt. # 49 at 8-10, 17.  The Court is unpersuaded by this argument.  First, the Riquelme warrant covered the entire computer, not specific hard drives.  See Dkt. # 41-1 at 2.  Second, it is reasonable that a reviewing officer would need to review the lower hard drive, at least cursorily, to conclude that it did not contain surveillance videos.  The fact that there were surveillance videos on the upper hard drive does not automatically negate the existence of surveillance videos on the lower hard drive.

1  Court recognized a "good-faith" exception to the exclusionary rule, which, when applicable,

2  prevents suppression despite a Fourth Amendment violation.  See Leon, 468 U.S. at 922-24.

3  Leon's good-faith exception "is satisfied if an officer acts 'in objectively reasonable

4  reliance' on the warrant."  Underwood, 725 F.3d at 1085 (quoting Leon, 468 U.S. at 922).  The

5  Leon Court "identified four situations that per se fail to satisfy the good faith exception,"

6  because "the officer will have no reasonable grounds for believing that the warrant was properly

7  issued."  United States v. Barnes, 895 F.3d 1194, 1201 (9th Cir. 2018) (quoting Underwood, 725

8  F.3d at 1085).  These are: (1) when the warrant results from recklessly or knowingly misleading

9  the issuing judge, (2) when the issuing judge "wholly abandon[s]" his or her judicial role,

10  (3) when the affidavit supporting the warrant is "so lacking in indicia of probable cause as to

11  render official belief in its existence entirely unreasonable," and (4) when the warrant is "so

12  facially deficient—i.e., in failing to particularize the place to be searched or the things to be

13  seized—that the executing officers cannot reasonably presume it to be valid."  Leon, 468 U.S. at

14  923 (citations omitted).[9]

15  There is no indication that Skagit County law enforcement knowingly or recklessly

16  misled Judge Riquelme or that Judge Riquelme abandoned her judicial role.  The Riquelme

17  warrant affidavit is detailed and far from bare bones.  The question, then, is whether the

18  dominion and control clause of the warrant was so facially deficient that no executing officer

19  could reasonably presume it to be valid.

20  "When we say that a warrant may be so facially deficient that it precludes reasonable

21  reliance, what we mean is that 'officers poised to conduct a search should be able to ascertain

22  that such a warrant fails to offer sufficiently detailed instruction and instead leaves them

23  guessing as to their task.'"  Towne, 997 F.2d at 549 (quoting Ortiz v. Van Auken, 887 F.2d

24  1366, 1370 (9th Cir. 1989)).  In Groh, the Supreme Court concluded that a warrant was so

25  facially deficient that no executing officer could reasonably presume it to be valid where the

26

27

28  [9] Because, as explained above, Washington State law does not govern, see supra Part C, the Court need not consider defendant's argument that the good faith exception to the exclusionary rule does not exist in Washington State.  See Dkt. # 49 at 25.

ORDER GRANTING MOTION TO SUPPRESS - 13

1   warrant "did not describe the items to be seized *at all*."  Groh v. Ramirez, 540 U.S. 551, 558

2   (2004) (emphasis in original).  In Kow, the Ninth Circuit considered a closer call.  See generally

3   United States v. Kow, 58 F.3d 423 (9th Cir. 1995).  Unlike the Groh warrant, the Kow warrant

4   did not fail entirely to list the items to be seized.  Rather, it "listed entire categories of

5   documents to be seized, encompassing essentially all documents on the premises."  Id.  The

6   Ninth Circuit emphasized that courts must be "vigilant in scrutinizing officers' good faith

7   reliance on such illegally overbroad warrants," id. (quoting Ortiz, 887 F.2d at 1370), and held

8   that the warrant was "wholly deficient" because it was not "limited by time, location, and

9   relationship to specifically described suspected criminal conduct," id. at 430; cf. Ctr. Art

10  Galleries-Haw., Inc. v. United States, 875 F.2d 747, 753 (9th Cir. 1989) (distinguishing as

11  facially valid warrants that limited the property to be seized to certain categories of documents

12  within specific time periods and restricted the search of the evidence to specific crimes).

13      Like the Kow warrant, the dominion and control clause of the Riquelme warrant lacked

14  time, relationship to crime, and file category limitations.  See Dkt. # 41-1 at 3.  Without these

15  limitations, law enforcement was left guessing what computer files were appropriate to search.

16  The Court therefore concludes that the dominion and control clause of the warrant was so

17  facially deficient that no executing officer could reasonably presume it to be valid.  Evidence

18  seized in reliance on the dominion and control clause of the warrant is thus not entitled to

19  Leon's good-faith exception to the exclusionary rule.

20                  **G. Balancing Deterrence and Social Cost of Suppression**

21      Finally, the government argues that the Court should not suppress the child pornography

22  evidence because the sole purpose of suppression is to deter future Fourth Amendment

23  violations, and the benefits of deterrence would not outweigh the social costs of suppression in

24  this case.  See Dkt. # 41 at 28-29.

25      The government is correct that "the sole purpose of the exclusionary rule is to deter

26  misconduct by law enforcement."  Davis, 564 U.S. at 246.  "The question of application of the

27  exclusionary rule is answered by weighing 'the substantial social costs exacted by the

28  exclusionary rule' with the benefit of increased deterrence of police misconduct."  Elmore, 917

ORDER GRANTING MOTION TO SUPPRESS - 14

1    F.3d at 1076 (quoting <u>Leon</u>, 468 U.S. at 906-07); <u>see also</u> <u>Herring v. United States</u>, 555 U.S.

2    135, 144 (2009) ("To trigger the exclusionary rule, police conduct must be sufficiently

3    deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence

4    is worth the price paid by the justice system."). If the exclusionary rule "does not result in

5    appreciable deterrence" of police misconduct, "then, clearly, its use in the instant situation is

6    unwarranted." <u>Id.</u> (quoting <u>United States v. Janis</u>, 428 U.S. 433, 454 (1976)). "To have any

7    appreciable deterrent benefit, the exclusion of evidence 'must alter the behavior of individual

8    law enforcement officers or the policies of their departments.'" <u>Id.</u> (quoting <u>Leon</u>, 468 U.S. at

9    918).

10         The infirmity of the government's argument is that it does not acknowledge that the

11   balancing of deterrence against the social cost of suppression is already incorporated into <u>Leon</u>'s

12   good-faith exception. <u>See</u> <u>United States v. Caesar</u>, 2 F.4th 160, 169 (3d Cir. 2021) ("The <u>Leon</u>

13   good faith exception to the exclusionary rule effectuates this balance by forbidding suppression

14   where officers act in 'good faith' or 'objectively reasonable reliance' on a search warrant later

15   held to be defective." (quoting <u>Leon</u>, 468 U.S. at 922)). In <u>Leon</u>, the Supreme Court instructed

16   that the exclusionary rule should not be applied in cases where police seized evidence "in

17   reasonable, good-faith reliance on a search warrant that is subsequently held to be defective."

18   <u>Id.</u> (quoting <u>Leon</u>, 468 U.S. at 905). The Court reasoned that "the deterrent purpose of the

19   exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least

20   negligent, conduct which has deprived the defendant of some right," and, therefore, "where the

21   official action was pursued in complete good faith the deterrence rationale loses much of its

22   force." <u>Id.</u> (quoting <u>Leon</u>, 468 U.S. at 919). Having concluded above that the dominion and

23   control clause of the Riquelme warrant was so facially deficient that no executing officer could

24   reasonably presume it to be valid, <u>see</u> <u>supra</u> Part F, the Court has already determined that the

25   deterrent purpose of the exclusionary rule would be met by excluding the child pornography

26   evidence. This weighs in favor of suppression.

27         The child pornography production crime with which defendant is charged is extremely

28   serious. Nonetheless, having established that suppression would satisfy the exclusionary rule's

1   deterrent purpose in this case, the Court is wary of denying suppression on the ground that the

2   abominable nature of the crime charged amplifies the social costs exacted by the exclusionary

3   rule.  The Fourth Amendment does not differentiate in this way.  Cf. Mincey v. Arizona, 437

4   U.S. 385, 393 (1978) ("No one can doubt the importance of [the vital public interest in the

5   prompt investigation of the extremely serious crime of murder].  But the public interest in the

6   investigation of other serious crimes is comparable.  If the warrantless search of a homicide

7   scene is reasonable, why not the warrantless search of the scene of a rape, a robbery, or a

8   burglary?  'No consideration relevant to the Fourth Amendment suggests any point of rational

9   limitation' of such a doctrine."  (quoting Chimel v. California, 395 U.S. 752, 766 (1969))).

10  **III.    Conclusion**

11        For all of the foregoing reasons, IT IS HEREBY ORDERED that defendant's Motion to

12  Suppress (Dkt. # 35) is GRANTED.

13        DATED this 16th day of May, 2022.

14

15

16        Robert S. Lasnik
          United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO SUPPRESS - 16