UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOHN HOLCOMB,

Defendant.

Case No. CR21-75-RSL

ORDER GRANTING RECONSIDERATION

This matter comes before the Court on the government's "Motion for Reconsideration of Suppression Order" (Dkt. # 63). On May 16, 2022, the Court entered an Order granting defendant John Holcomb's Motion to Suppress (Dkt. # 58). The government moves for reconsideration of that Order.

## I. Background

In summary, in January 2020, an adult woman accused defendant of rape, and there was probable cause to believe that defendant's computer held homemade surveillance videos of the alleged rape. The alleged rape occurred during a known window of a few hours, and defendant and the woman had only been in contact for a short time prior. Law enforcement obtained a warrant to search defendant's computer for evidence of the alleged rape. The warrant was generally properly limited, including temporally, but included a "dominion and control" provision that allowed officers to search defendant's computer without temporal, relationship to

crime, or file category limitation.[1] In practice, the dominion and control clause superseded the limitations contained in the other warrant clauses and allowed officers to search defendant's entire computer. While carrying out this search of defendant's computer, law enforcement located videos timestamped to 2016 that allegedly show defendant raping a then-seven-year-old girl. For a more detailed description of the facts of this case, see Dkt. # 58 at 1-4.

On May 16, 2022, the Court entered an Order granting defendant's motion to suppress the child pornography videos. The Court determined that the warrant authorized an unconstitutional general search because it both lacked particularity and was overbroad. See Dkt. # 58 at 9-12. Regarding particularity, the Court reasoned that the lack of temporal limitation in the dominion and control clause was dispositive because the alleged crime and prior contact between defendant and the woman occurred within a known timeframe, which meant that it would have been reasonable to provide a temporal limitation at that juncture of the investigation. See id. at 10-11 (citing Marron v. United States, 275 U.S. 192, 196 (1927); United States v. Banks, 556 F.3d 967, 973 (9th Cir. 2009); United States v. Meek, 366 F.3d 705, 716 (9th Cir. 2004); United States v. Johnston, 789 F.3d 934, 941 (9th Cir. 2015); United States v. Hill, 459 F.3d 966, 978 (9th Cir. 2006)). Regarding breadth, the Court reasoned that the dominion and control clause was overbroad because it sought materials outside the scope of probable cause due to its lack of temporal limitation. See id. at 11-12 (citing United States v. SDI Future Health, Inc., 568 F.3d 684, 702 (9th Cir. 2009); In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d 847, 857 (9th Cir. 1991); United States v. Reeves, 210 F.3d 1041, 1046-47 (9th Cir. 2000)).

The Court declined to apply Leon's good-faith exception to the exclusionary rule because the dominion and control clause lacked time, relationship to crime, and file category limitations, thus leaving law enforcement guessing which computer files were appropriate to search, and

---

[1] The dominion and control clause authorized law enforcement to search defendant's computer, laptop, and phone for: "Files[,] artifacts or information including but not limited to, documents, photographs, videos, e-mails, social media posts, chats and internet cache that would show dominion and control for the devices." Dkt. # 41-1 at 3.

was therefore so facially deficient that no executing officer could reasonably presume it to be valid. Id. at 12-14 (citing United States v. Leon, 468 U.S. 897, 906, 914, 922-24 (1984); United States v. Elmore, 917 F.3d 1068, 1076 (9th Cir. 2019); United States v. Calandra, 414 U.S. 338, 354 (1974); United States v. Underwood, 725 F.3d 1076, 1085 (9th Cir. 2013); United States v. Barnes, 895 F.3d 1194, 1201 (9th Cir. 2018); United States v. Towne, 997 F.2d 537, 549 (9th Cir. 1993); Ortiz v. Van Auken, 887 F.2d 1366, 1370 (9th Cir. 1989); Groh v. Ramirez, 540 U.S. 551, 558 (2004); United States v. Kow, 58 F.3d 423 (9th Cir. 1995); Ctr. Art Galleries-Haw., Inc. v. United States, 875 F.2d 747, 753 (9th Cir. 1989)). In reaching this conclusion, the Court analogized primarily to Kow. See id. The Court declined the government's invitation to look to the nature of the alleged crime to balance deterrence and the social cost of suppression on the ground that Leon's good-faith test already incorporates this balance. See id. at 14-16 (citing Davis v. United States, 564 U.S. 229, 246 (2011); Elmore, F.3d at 1076; Leon, 468 U.S. at 905, 906-07, 918, 919, 922; Herring v. United States, 555 U.S. 135, 144 (2009); United States v. Janis, 428 U.S. 433, 454 (1976); United States v. Caesar, 2 F.4th 160, 169 (3d Cir. 2021); Mincey v. Arizona, 437 U.S. 385, 393 (1978); Chimel v. California, 395 U.S. 752, 766 (1969)).

**II. Analysis**

The government now moves the Court to reconsider its ruling on Leon's good-faith exception to the exclusionary rule. "Motions for reconsideration are disfavored. The court will ordinarily deny such motions in the absence of a showing of manifest error in the prior ruling or a showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." Local Rules W.D. Wash. CrR 12(b)(13)(A). The government concedes that it does not present new facts or legal authority which could not have been brought to the Court's attention earlier with reasonable diligence. Rather, the government asserts that the Court committed manifest error.

In particular, the government argues that the Court articulated a new constitutional rule – namely, that an authorization to search for digital evidence showing that a suspect controlled a computer must be temporally limited – and then retroactively imposed this rule to preclude Leon's good-faith exception. See Dkts. # 63 at 1, 5; # 77 at 1. The Court denies that it

articulated a new constitutional rule. Regarding particularity, it has been Ninth Circuit law for more than forty years that "[g]eneric classifications in a warrant are acceptable only when a more precise description is not possible." United States v. Cardwell, 680 F.2d 75, 78 (9th Cir. 1982). Regarding breadth, the Ninth Circuit articulated more than thirty years ago that "the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant." In re Grand Jury Subpoenas Dated Dec. 10, 1987, 926 F.2d at 857. The Court applied these well-established rules to the facts of the case. See Dkt. # 58 at 9-14.

Nonetheless, given the thoughtful arguments regarding Leon's good-faith exception now before it for the first time,[2] the Court takes this opportunity to revisit its good-faith analysis and grants reconsideration.

Under Leon's good-faith exception to the exclusionary rule, "evidence seized under a later-invalidated warrant is admissible if the 'officers conducting the search acted in good faith and in reasonable reliance on the warrant.'" King, 985 F.3d at 710 (quoting Kow, 58 F.3d at 428). "The exception doesn't apply, conversely, if the officers' conduct showed 'deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights.'" Id. (quoting Davis, 564 U.S. at 238). "The central question is 'whether a reasonably well trained officer would have

[2] The Court notes that the government's original argument regarding Leon's good-faith exception was limited, citing only to Leon and Massachusetts v. Sheppard, 468 U.S. 981 (1984). The government identified for the first time in its motion for reconsideration seven cases that it argues reject Fourth Amendment arguments like those that defendant raises. See Dkt. # 63 at 5-6. Furthermore, a critical Ninth Circuit decision informing this Order, United States v. Needham, 718 F.3d 1190 (9th Cir. 2013), was cited for the first time in the government's reply to the present motion. See Dkt. # 77 at 3.

While the Court discourages the government's strategy of presenting fleshed out argumentation for the first time on reconsideration, defendant's arguments regarding the impropriety of allowing the government a "second bite of the apple" are drawn from civil caselaw. See Dkt. # 75 at 1-4. The Court has "inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding." United States v. Lopez-Cruz, 730 F.3d 803, 811 (9th Cir. 2013).

known that the search was illegal despite the [warrant judge's] authorization.'" Id. (quoting Leon, 468 U.S. at 922 n.23).

The central controversy on reconsideration is the standard that governs the good-faith exception. The government argues that under Messerschmidt v. Millender, the "same standard of objective reasonableness applies to the good-faith doctrine under Leon and qualified immunity for an officer who obtained or relied on an allegedly invalid warrant." Dkt. # 63 at 8 (citing Messerschmidt, 565 U.S. at 546 n.1). Defendant responds that the government overstates Messerschmidt: "it is not that the law of good faith exception looks to the law of qualified immunity. Rather, when the good faith exception is not applicable, then there is no qualified immunity." Dkt. # 75 (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986); Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017)).

Messerschmidt is a qualified immunity case, and it is unclear if the Supreme Court intended the road between Leon's good-faith exception and qualified immunity to run both ways. See Messerschmidt, 565 U.S. at 547 n.1 (quoting Malley, 475 U.S. at 344 (stating that qualified immunity looks to Leon), and citing Groh, 540 U.S. at 565 n.8 (stating that qualified immunity looks to Leon)). Nonetheless, in United States v. Needham, the Ninth Circuit stated that "the standard for granting qualified immunity is the same as the standard of objective reasonableness under Leon . . ." and then relied on a grant of qualified immunity in a similar case to invoke Leon's good-faith exception. 718 F.3d 1190, 1195 (9th Cir. 2013). Thus, in Needham, the Ninth Circuit ruled that the road runs both ways.[3] The influence of Needham on

---

[3] In Needham, after the district court ruled on suppression but before the Ninth Circuit heard the appeal, the Ninth Circuit granted qualified immunity in another case with a parallel issue regarding whether the warrant was supported by probable cause – Dougherty. See Needham, 718 F.3d at 1194-1195 (citing Dougherty v. City of Covina, 654 F.3d 892 (9th Cir. 2011)). The Ninth Circuit reasoned that because it granted qualified immunity to the officers in Dougherty for their reliance on a later-invalidated warrant, it must also invoke Leon's good-faith exception to deny suppression in Needham. Id. at 1195.

Dougherty, in turn, did not apply the test articulated in Leon to determine if the officers were entitled to qualified immunity. Rather, the Dougherty court articulated the standard rule that "[a] police officer is not entitled to qualified immunity if: (1) the facts show that the officers conduct violated a plaintiff's constitutional rights; and (2) those rights were clearly established at the time of the alleged

Ninth Circuit jurisprudence is arguably limited; the Ninth Circuit has never cited back to Needham for the direct proposition that a court considering suppression should look to qualified immunity jurisprudence. See United States v. Perkins, 850 F.3d 1109, 1120 (9th Cir. 2017); Armstrong v. Asselin, 734 F.3d 984, 993 n.42 (9th Cir. 2013);[4] United States v. Wright, No. 20-10303, 2022 WL 67341, at *2 (9th Cir. Jan. 6, 2022), cert. denied, 142 S. Ct. 2728 (2022); United States v. Cathcart, 776 F. App'x 542, 543 (9th Cir. 2019); United States v. Thompson, 743 F. App'x 72, 74 (9th Cir. 2018); United States v. Patton, 650 F. App'x 324 (9th Cir. 2016); United States v. Medel, 588 F. App'x 601 (9th Cir. 2014); United States v. Perkins, 583 F. App'x 796, 797 (9th Cir. 2014); United States v. Guadagni, 583 F. App'x 778, 779 (9th Cir. 2014); United States v. Espino, 555 F. App'x 649, 650 (9th Cir. 2014). Nonetheless, as a published opinion of the Ninth Circuit, Needham is binding on this Court.

Therefore, in determining if law enforcement exhibited deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the Court considers if (1) the facts show that the officers' conduct violated defendant's constitutional rights, and (2) those rights were clearly established at the time of the alleged violation. See Davis, 564 U.S. at 238; Pearson v. Callahan, 555 U.S. 223, 232 (2009); Saucier v. Katz, 533 U.S. 194, 201 (2001).

Regarding the first prong of this analysis, the Court reaffirms its earlier ruling that law enforcement violated defendant's Fourth Amendment rights because the warrant both lacked particularity and was overbroad. See Dkt. # 58 at 9-12.

Regarding the second prong, the "Supreme Court has explained that '[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its

---

violation," Dougherty, 654 F.3d at 899-900 (quoting Millender v. Cnty. of Los Angeles, 620 F.3d 1016, 1022-23 (9th Cir. 2010), rev'd sub nom. Messerschmidt, 565 U.S. 535), and then determined that the law in the Ninth Circuit was not clearly established regarding whether the allegations in question provided probable cause to search for the evidence in question and, therefore, that the officers were entitled to qualified immunity, id. at 900.

[4] Armstrong, which is a qualified immunity case, cites to Needham for the proposition that "falling within Leon necessarily means that the police officer does enjoy qualified immunity." Armstrong, 734 F.3d at 993 (citing Needham, 718 F.3d at 1194). This statement, however, does not go so far as to adopt the bidirectional analysis presented in Needham.

existence unreasonable will the shield of immunity be lost.'" Needham, 718 F.3d at 1194 (quoting Malley, 475 U.S. at 344-45). Under Needham, this same standard must be applied to our Leon inquiry. Id. at 1195. Accordingly, the Court concludes that these rights were not clearly established, and thus the "search in this case was executed in objectively reasonable reliance on the search warrant." Id.

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, an officer "cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the [officer's] shoes would have understood that he was violating it." Plumhoff v. Rickard, 572 U.S. 765, 778-79 (2014) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741-42 (2011)). The Supreme Court has "repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Id. (citing Al-Kidd, 563 U.S. at 742) (internal punctuation omitted). This is not to say that the very action in question must have previously been held unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson, 483 U.S. at 640 (citing Mitchell v. Forsyth, 472 U.S. 511, 528, 535 n.12 (1985); Malley, 475 U.S. at 344-45; Davis, 468 U.S. at 191, 195); see also Ioane v. Hodges, 939 F.3d 945, 956 (9th Cir. 2018). The Court first looks to binding precedent to determine whether a right was clearly established. Ioane, 939 F.3d at 956 (citing Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013)).

There is no doubt that the rules that the Court applied regarding particularity and breadth are well-established. However, these rules are general, and their application to the facts of this case is murkier.

The Court is unaware of any binding precedent considering the precise question now before the Court: whether a non-temporally limited dominion and control clause renders an

otherwise properly limited warrant authorizing search and seizure of digital evidence unconstitutionally general.

In the original Order, the Court analogized to Kow to determine that Leon's good-faith exception was unavailable. See Dkt. # 58 at 14. While the Kow court determined that Leon's good-faith exception was unavailable due to particularity and breadth deficiencies in the warrant like those the Court identified in the original Order,[5] Kow involved a warrant that was overly general throughout – not in a single clause as was the warrant here. Compare id. at 428 (stating that the Kow warrant "listed entire categories of documents to be seized, encompassing essentially all documents on the premises") with Dkt. # 41-1 at 3 (warrant limited in all but dominion and control clause). While the practical effect of this distinction is debatable – the single, unlimited dominion and control clause here arguably had the effect of superseding the limitations in the other warrant clauses – it is nonetheless a distinction that prevents the Court from unequivocally determining that a reasonable officer would have understood that he was violating the law as articulated in Kow.

Further, the Ninth Circuit issued Kow in 1995 – now almost thirty years ago. In the interim, the Supreme Court and Ninth Circuit have validated warrants lacking similar limitations in certain situations. See, e.g., Messerschmidt, 565 U.S. at 548-49, 553 (validating a warrant authorizing a search of a home for *all* firearms and ammunition, as well as evidence indicating gang membership, where the warrant affidavit mentioned only one specific gun, which was owned by a known gang member who had fired it in public in an attempt to murder his ex-girlfriend for calling the police on him, because "it would not have been 'entirely unreasonable'" for an officer to believe that the gang member owned multiple firearms, there was probable cause to search for all firearms and firearm-related materials, and evidence of gang involvement would aid in the prosecution of the gang member for the criminal acts at issue); King, 985 F.3d at 710 (validating a warrant authorizing the search of a home for "any firearm"

[5] Namely, failure to limit by "time, location, and relationship to specifically described suspected criminal conduct." Kow, 58 F.3d at 430.

in a felon-in-possession investigation where the warrant affidavit described only one specific gun but described King's prior concealed firearm use and violent felony and drug trafficking convictions because "we can't say that officers should have questioned the judge's authorization to search for and seize all firearms, since any gun constituted illegal contraband and evidence of a crime in the hands of King"); Schesso, 730 F.3d at 1045-46 (validating a warrant authorizing the search of Schesso's entire computer system and digital storage devices for any evidence of possession of or dealing in child pornography where Schesso possessed and uploaded one child pornography video to a peer-to-peer file sharing network, therefore establishing probable cause to believe that Schesso possessed other child pornography videos, and leaving the government "faced with the challenge of searching for digital data that was not limited to a specific, known file or set of files"). The Ninth Circuit has also allowed a seemingly limitless digital evidence dominion-and-control-style clause to come before it without comment while considering other issues. See Johnston, 789 F.3d at 942 (determining that a search did not exceed the scope of the warrant without commenting on the fact that the warrant broadly authorized agents to search Johnston's "home, computers, and any other 'computer-related' hardware, software, and equipment" for "[r]ecords or other items which evidence ownership or use of computer equipment found in the . . . residence" without temporal or file type limitation). Additionally, in a non-digital context, the Ninth Circuit has validated a dominion-and-control style clause that lacked temporal and item type limitations. See United States v. Shi, 525 F.3d 709, 731-32 (9th Cir. 2008) (where Shi was accused of killing a ship's Captain and First Mate and thus endangering maritime navigation, validating a warrant authorizing the search of Shi's bunk area and seizure of "items of personal property which tend to identify the person(s) in control, possession, and ownership of the property that is the subject of this warrant . . ." because there was probable cause, the clause was limited to items that could identify Shi, and the agents lacked additional information that would have allowed a more specific description of these

items). While it is the opinion of the Court that these cases are distinguishable, they demonstrate a lack of definition in the contours of the law at issue.

The Court affirms its initial conclusion that law enforcement violated defendant's Fourth Amendment rights. However, the separate conclusion articulated in this Order that these rights were not clearly established is buttressed by the volume of legal research and analysis required to reach that initial conclusion. Leon's good-faith exception to the exclusionary rule therefore applies here.

Finally, the Court denies defendant's request for an evidentiary hearing. See Dkt. # 75 at 28-30. Defendant does not assert that a Franks hearing is appropriate in this case. Leon's good-faith analysis asks if officers acted *objectively* reasonably. See Leon, 468 U.S. at 918-19. Indeed, the Supreme Court "eschew[s] inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant." Id. at 923 n.23. The Court is hard pressed to see how defendant's requested hearing would not violate this norm or how the evidence defendant seeks to present could change the decision reached in this Order.

The Court does not take this decision lightly. The state of the law is admittedly opaque. However, after adopting the "clearly established" framework, this lack of clarity plays to the government's favor. Given the significance of digital evidence in modern judicial proceedings, the district courts would be well-served by a Ninth Circuit opinion addressing the issues discussed in this Order granting reconsideration and the Court's original Order granting suppression.

**III. Conclusion**

For all of the foregoing reasons, IT IS HEREBY ORDERED that the government's Motion for Reconsideration of Suppression Order (Dkt. # 63) is GRANTED. Upon

reconsideration, defendant's Motion to Suppress (Dkt. # 35) is DENIED. The Court REVERSES its Order (Dkt. # 58) granting defendant's Motion to Suppress.

DATED this 8 day of November, 2022.

Robert S. Lasnik
United States District Judge